1 | Claudio Aguirre
2 | 18740 Vista Del Canon unit E. # 79
Newhall, California 91321
3 | (818) 741-6162
claudioreyaguirre@hotmail.com
4 | In PRO PER



# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

Claudio Aguirre

        Plaintiff,

v.

Cal-Western Reconveyance Corporation,
Aurora Loan Services, Inc.,
Mortgage Electronic Recording Systems
Joe Krasovic, Shannon K. Mottola and
Rhonda Rorie
and DOES 1-10, inclusive,

        Defendants.

**CASE NO: CV11- 6911-CAS (AGRx)**

*SECOND AMENDED COMPLAINT FOR:*

1. **Violation of Federal Rules of Civil Procedure 17 through 17*(a)(1)(G)* inclusive;**
2. **Violations of the Fair Debt Collection Practices Act. 15 U.S.C. § 1692g and 15 USC § 1692f;**
3. **Violations of The Real Estate Settlement Practices Act (RESPA) 12 U.S.C. § 2605;  12 USC § 2607;**
4. **California  Rosenthal Act. ("Rosenthal Act") 1788  et seq.;**
5. **Violations of 18 U.S.C. §§ 1961 et seq;**
6. **Declaratory Relief;**
7. **Violations of the Truth in Lending Act (TILA)15 U.S.C. § 1641 et seq.;**
8. **Quiet Title;**
9. **Mail Fraud 18 USC § 1341; Intentional Fraud; Fraud Upon the Court; Notary Forgery; Recordation  of  Unlawful and Void Instruments;**
10. **Violations of California Civil Code §§ 2923 (2)(b); 2924; 2924f (a)(b)(1); 2932.5; 2934 (a)(1)(A); 2934(a) (D) (4).**

**JURY TRIAL DEMANDED**

---

1

**SECOND AMENDED COMPLAINT**

others, and it is therefore under the authority of the California Rosenthal Act ("Rosenthal Act"), Cal. Civil Code sections 1788 et seq.

**8.** Defendant, Cal-Western Reconveyance Corporation ("Cal-Western") is the alleged assignee trustee to the deed of trust that allegedly secured the subject Property, and conducting business in the County of Los Angeles, State of California; also engaged in the business of collecting purported amount due from homeowners on behalf of Aurora Loan Services, Inc. thus falling in the category of a Debt Collector, pursuant to *Wilson v. Draper & Goldberg, PLLC, 443 F.3d 373, 376 (4th Cir. 2006)*

**9.** Defendant, Mortgage Electronic Recording Systems (MERS) was at all times relevant hereto and is an entity that operates a national electronic registry that tracks beneficial ownership interests and servicing rights associated with residential mortgage loans and any changes in those interests or rights.

**10.** Defendant, Joe Krasovic was at all times relevant hereto to and is an employee of Cal-Western Reconveyance Company appointing himself as a Secretary of Mortgage Electronic Recording Systems for the sole purpose of substituting the trustee. However, there is no evidence in any form granting such authority. Furthermore, the assignments of power of sale should have been from MERS through the Trustee and not from MERS directly. **(See: page 3 of the Deed of Trust, Exhibit A )**

**11.** Defendant, Shannon K. Mottola was at all times relevant hereto and is an employee of Cal-Western Reconveyance Corportion working in the Trustee Sale Dept.

**12.** Defendant, Rhonda Rorie was at all times relevant hereto and is an employee of Cal-Western Reconveyance Corporation performing the duty of an in-house notary. (for some reason Rhonda has not surrender her journal book since her commission expired on May 16, 2010)

## FACTUAL ALLEGATIONS

**13.** *It is not now*, and has never been my intention not to pay a debt I, legally owe.

**14.** This is another case of unlawful foreclosure from entities that are not the Real Party in Interest. Hence, *do not have standing to foreclose.* The requirement of "standing" is satisfied if it can be said that the person has a legally protectible and tangible interest at stake in the litigation. (See: Guidry v. Roberts, La.App., 331 So.2d 44, 50.) Standing is a concept utilized to determine if a party is sufficiently affected so as to insure that a justiciable

---

4

**SECOND AMENDED COMPLAINT**

**18.** Page 13 paragraph 24 of the Deed Of Trust under "Substitute Trustee," **(Exhibit A)**, the language clearly states that the **Lender**, may appoint successor trustees via an instrument acknowledged by the **Lender** and recorded in the County in which the property is located. This paragraph also states **"This procedure for substitution shall govern to the exclusion of all other provisions for substitution"** This implies that only the Lender can substitute a trustee. The Lender as defined on page 1 of the Deed Of Trust is GN Mortgage **(Exhibit A )**, and there is no mention of Successors or Assigns. This paragraph does not state that successors, assigns, nominees or agents may appoint a Successor Trustee. Therefore, The Substitution Of Trustee is invalid as it was executed by an alleged Assistant Secretary of MERS (appointing oneself as trustee) and not the Lender.

**18.** Plaintiff is informed and believes and thereon alleges Defendants, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Inc., AURORA LOAN SERVICES, and CAL- WESTERN RECONVEYANCE CORPORATION are not in physical possession of the actual NOTE, did not pay actual consideration for the NOTE, and/or are properly endorsed or receive proper endorsement of the actual NOTE in order to obtain the requisite power of sale. See: UCC §3-305. "for the note to be enforced, the person who asserts the status of the holder must be in possession of the instrument." See UCC § 1-201 (20) and comments.

**19.** Defendant, Cal-Western Reconveyance Corporation has initiated the foreclosure process on Plaintiff's home with fabricated, forged documents and, did in fact, recorded them, at the Los Angeles County Recorders Office (Violation of California Penal Code Section 115)

## CALIFORNIA PENAL CODE SECTION 115

(a) Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony.

(b) Each instrument which is procured or offered to be filed, registered, or recorded in violation of subdivision (a) shall constitute a separate violation of this section.

**20.** Defendants, Aurora Loan Services, Inc., MERS and Cal-Western Reconveyance Corporation are not the Real Parties in Interest. Thus, lacking STANDING to legally foreclose.

**SECOND AMENDED COMPLAINT**

controversy is presented to the court; it is the right to take the initial step that frames legal issues for ultimate adjudication by court or jury. (See: <u>State ex rel. Cartwright v. Oklahoma Tax Com'n, Okl., 653 P.2d 1230, 1232.</u>)

**15.**      This is another case of unlawful activities by Defendants where they refuse to comply with State and Federal regulations such as, *15 USC 1692g (b), 2932.5* and attempting to foreclose on Plaintiff's  home with forged documents and obviously without STANDING, AGENCY and legal authority to act. Defendant Cal-Western Reconveyance in concert with the help of its employees,   Joe Krasovic, Shannon K. Mottola and Rhonda Rorie; who Plaintiff believes, alleges and realleges,  are Robo-Signers forging the, Law required  legal documents  in a foreclosure process. **(See: Mortgage Document Examination & Investigation Report afforded herein).**

16.      Defendant Aurora Loan Servicing Company has fail to provide Plaintiff with name  and address of the current owner of the obligation under California Civil Code 2943 and Title 15 § 1641. Liability Of Assignees: Servicer not treated as owner on basis of assignment for administrative convenience.  A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. **<u>Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.</u>**

**17.**      Defendant, Cal-Western Reconveyance Corporation acting as Substituted Trustee is attempting to foreclose on Plaintiff's home. However, Cal-Western Reconveyance Corporation is not a true substituted trustee because it was not substituted accordingly to the terms under the Deed of Trust. **(See: page 3, of the Deed of Trust, Exhibit A ), Transfer Of Rights in The Property,** the language states therein that "**Borrower irrevocably grants to trustee** in trust with power of sale" This suggests that **<u>only the Trustee can assign</u>** instruments which convey the power of sale and not MERS as nominal beneficiary.

**SECOND AMENDED COMPLAINT**

*substitution sign, under penalty of perjury, a separate written document stating the following:*
*(A) The substitution has been signed pursuant to subparagraph (B) of paragraph (1).*
*(B) None of the undersigned is a licensed real estate broker or an affiliate of the broker that is the issuer or <u>servicer of the obligation secured by the deed of trust.</u>*

26. AS STIPULATED IN THE DEED OF TRUST, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS ("MERS") HOLDS LEGAL TITLE AS AN AGENT OR NOMINEE FOR THE LENDER/INVESTOR ONLY, MERS IS NOT ENTITLED TO PAYMENT OF THE SECURED DEBT.THUS, RENDERING MERS WITHOUT LEGAL AUTHORITY TO ASSIGN THE DEED OF TRUST OR THE UNDERLYING NOTE.

27. MERS, as "nominee", it must by law and by the expressed terms of the Deed of Trust, name all beneficiaries it acts to substitute trustee for.**(Cal. Civ. Code 2934(a))** It does not, and therefore the Substitution of Trustee and Notice of Trustee's sale are void and of no legal effect.

28. The Foreclosure Process Investigation Report afforded herein clearly discloses **Malfeasant, Unconscionable Acts, Evidence of Back Dating and Notary Fraud.** The Substitution Of Trustee was allegedly executed by Mr. Joe Krasovic on 04/08/2009 which was prior to the day the Notice Of Default (Exhibit C) was recorded. This instrument was not recorded until 06/16/2009 which was 56 days the Notice Of Default was recorded. Under what species of prudence does one execute an instrument then wait 56 days to record it when timing is of such extreme importance? Further, the Investigation Report afforded herein, has revealed that the dates on instrument were handwritten by the same individual which not only reeks of backdating but the <u>similarity of the handwriting of the dates reeks of notary fraud as well</u>. It appears the notary entered the dates for Mr. Joe Krasovic as well as hers. If Joe Krasovic was present before her, why then would he not date his signature in his own handwriting? Evidence can only suggest that the date on was back dated by the notary to comply with the Notice of Default which had already been recorded.

29. Defendants refuse to validate and verify debt. On or about February 13, 2010 (first request) and on or about June 3, 2011(second request) Aurora Loan Services, Inc., Mortgage

**SECOND AMENDED COMPLAINT**

**36.**    By the unlawful actions of Defendants, Defendants have induced INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. Claudio Aguirre (Plaintiff) states, The fact of becoming homeless because someone with no legal authority foreclose on me, creates anger in me to a point that, I can't think straight. But, not having a roof over the head of my children, not knowing what will happen the day after, when I go to bed. It has taken a toll on me to a degree that I, became mentally unstable, and has gradually become difficult to function as an employee, father and husband.

**"The elements** of a prima facie case for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) the actual and proximate causation of the emotional distress by the defendant's outrageous conduct." **(*Cervantez v. J.C. Penney Company, Inc.* (1979) 24 Cal.3d 579, 593 (*Cervantez*).) <u>An attempt to collect an alleged debt by means of a false document has been held to be sufficiently outrageous to constitute an outrageous act for purposes of this tort.</u>** (*Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 641, fn. 1.)

**37.**    Plaintiff incorporate his prior allegations that Aurora Loan Services, Inc., in concert with Cal-Western Reconveyance Corporation and its employees (Joe Krasovic, Shannon K Mottola and Rhonda Rorie (notary) sent to Plaintiff, via The United States Post Office, forged documents stating, unverified amounts owed by the Plaintiff to Aurora Loan Services, Inc. Thus, violating California Penal Code Section 115.

## CALIFORNIA PENAL CODE SECTION 115

115. (a) Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony.

(b) Each instrument which is procured or offered to be filed, registered, or recorded in violation of subdivision (a) shall constitute a separate violation of this section.

**SECOND AMENDED COMPLAINT**

**38.**    Plaintiff further alleges: On the Substitution of Trustee, Cal-Western Reconveyance Corporation claims, that  MERS assigned the contractual rights under the Deed of Trust to them. However, there is no evidence of any recorded assignment as required by California Civil Code 2932.5. Which would vest the Power of Sale.

IN CALIFORNIA, CALIFORNIA CIVIL CODE 2932.5 GOVERNS THE POWER OF SALE UNDER AN ASSIGNED MORTGAGE, AND PROVIDES THAT THE POWER OF SALE CAN ONLY BE VEST IN A PERSON ENTITLED TO MONEY  PAYMENTS. "WHERE THE POWER TO SELL REAL PROPERTY IS GIVEN TO A MORTGAGEE, OR OTHER ENCUMBRANCER, IN AN INSTRUMENT INTENDED TO SECURE THE PAYMENT OF MONEY, THE POWER IS PART OF THE SECURITY AND VESTS IN ANY PERSON WHO BY ASSIGNMENT BECOMES ENTITLED TO PAYMENT OF THE MONEY SECURED BY THE INSTRUMENT . *THE POWER OF SALE MAY BE EXERCISED BY THE ASSIGNEE IF THE ASSIGNMENT IS DULY ACKNOWLEDGED AND RECORDED"*

In *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 167-68 (Kan. 2009), held that MERS was not a necessary party to a foreclosure action because it had no tangible interest in the mortgage as nominee for the lender.

MERS, as the nominee for the Lender under the terms in the Deed of Trust, does not possess the promissory note and **cannot assign it, absent evidence of an explicit authorization from the original lender.**  See (Saxon Mortgage Services, Inc. v. Hillery (N.D. Cal. Dec. 9, 2008, No. C-08-4357) 2008 U.S. Dist. LEXIS 100056; see also In re Agard (Bankr. E.D. N.Y. Feb. 10, 2011, No. 10-77338-reg) 2011 Bankr. LEXIS 488.)

# FIRST CAUSE OF ACTION
## Violation of Federal Rules of Civil Procedure 17 through 17*(a)(1)(G) inclusive;*
## (Against, Cal-Western Reconveyance Corporation, Aurora Loan Services, Inc., Mortgage Electronic Recording Systems)

**39.**    Plaintiff incorporates here each and every allegation set forth above.

**40.**    Defendants, are attempting to foreclose on Plaintiff's property without standing.

**41.**    An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought:

(A) an executor;
(B) an administrator;
(C) a guardian;
(D) a bailee;

---

11

SECOND AMENDED COMPLAINT

Electronic Recording Systems and Cal-Western Reconveyance Corporation refused to validate the alleged debt and continued with their collection activities.

### 15 USC 1692g(b) Disputed debts

*If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, **the debt collector shall cease collection of the debt**, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection **(a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.***

30.    Cal-Western Reconveyance Corporation and Aurora Loan Services, Inc. are debt collectors, and are subject to requirements and restrictions of the FDCPA.

See: *Heintz v. Jenkins, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995)*

31.    The Fourth Circuit held that "trustees... acting in connection with a foreclosure can be `debt collectors' under the FDCPA. See: Moore v. COMMONWEALTH TRUSTEES, LLC, 2010

32.    In Wilson v. Draper & Goldberg, the Fourth Circuit held that "trustees . . . acting in connection with a foreclosure can be `debt collectors' under the [FDCPA]." 443 F.3d at 375.

33.    In Kaltenbach v. Richards, 464 F.3d 524 (5th Cir. 2006), Levin v. Klluever & Platt, 2003 WL 22757763 (N.D. Ill. Nov. 19, 2003), Blum v. Fisher & Fisher, 961 F. Supp. 1218 (N.D. Ill. 1997), Wehrheim v. Secrest, 2002 WL 31427515 (S.D. Ind. Oct. 9 2002).

34.    Cal-Western Reconveyance Corporation, Aurora Loan Services, Inc. and Mortgage Electronic Recording Systems; have refused to prove they have the RIGHT, STANDING, AGENCY, CAPACITY OR AUTHORITY to collect and foreclose. Defendants must prove to this Court that, they have the legal authority to conduct the Trustee Sale.

35.    Aurora Loan Services, Inc. in concert with Cal-Western Reconveyance Corporation has sent to Plaintiff's home numerous Notices of Default of which are unable or unwilling to validate, making each one of them a violation of 15 U.S.C. 1692 g.

---

9

**SECOND AMENDED COMPLAINT**

Services, Inc."), Mortgage Electronic Recording Systems (hereinafter "MERS"),JOE KRASOVIK, RHONDA RORIE, SHANON K. MOTTOLA and DOES 1-10, inclusive, (collectively hereinafter "Defendants").  Plaintiff hereby demands a trial by jury and pleads as follows:

## JURISDICTION AND VENUE

1.   Plaintiff claims against Defendants includes  violations of  federal statutes commonly known as FDCPA, 15 USC 1692g, 18 USC § 1341, 18 U.S.C.§§1961 *et seq;* with additional claims under California state law.

2.   These claims all arise out of the same controversy and sequence of events. The real property which is the subject of this complaint is located within the State of California, County of Los Angeles.

3.   This Court has subject matter jurisdiction over this action under  28 U.S.C. §§ 1331 and 1367, 18 U.S.C. §1964(c), and 15 U.S.C. §1640(e).

4.   Venue is proper in the Central District of California under 28 U.S.C. § 1391(b).

5.   This is an action for damages which exceed $75,000.00.

## THE PARTIES

6.   Plaintiff Claudio Aguirre is, and at all times mentioned herein is an individual residing in the State of California, County of Los Angeles. Whom currently resides at the subject property of this Complaint, the location of which is commonly known as 18740 Vista Del Canon Unit E # 79 Newhall, California 91321 ('hereinafter the property').

Plaintiff is a consumer within the meaning of the FDCPA, 15 U.S.C. §1692a (3).

7.   Defendant, Aurora Loan Services, Inc., was at all times relevant hereto and is a Delaware Corporation, doing business in California as a Loan Servicer/ debt collector. (See: *Wilson v. Draper & Goldberg, PLLC, 443 F.3d 373, 376 (4th Cir. 2006)*)

Defendant, Aurora Loan Services, Inc., was and is in the business of being a "servicer" of "federally related mortgage loans" as those terms are defined in the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2602(1) and 2605(i)(2). Plaintiff is further informed and believes and thereon alleges that Aurora Loan Services, Inc. was and is in the business of the collection of consumer debts, either on behalf of itself or

SECOND AMENDED COMPLAINT

(See: **Aurora Loan Servs., LLC Weisblum, 85 AD3d 95, 108.,** and **Culhane v. Aurora Loan Services of Nebraska, --- F.Supp.2d ---- (2011).**)

21.     None of the Defendants have legal authority to initiate the foreclosure action because, they are not in any contractual agreement with Plaintiff, in fact, Defendants are complete strangers to the transaction, in addition, none of the Defendants are listed anywhere on the Promissory Note. Defendant Cal-Western Reconveyance Corp. does not have the legal authority to invoke the power of sale because its assignment of mortgage does not comply with California Civil Code 2932.5 nor, it satisfies the elements of The Statutes of Frauds. Take notice that, In Assignments of Contractual Rights covered by the STATUTES OF FRAUDS, the Assignment MUST be in writing and  consideration must be given in order to satisfy some of the elements. Otherwise, the contract is unenforceable.

22.     Also there is substantial evidence of Conflicting Beneficiaries – The Corporation Assignment Of Deed Of Trust (Exhibit **B**) purports to assign security instruments to Aurora Loan Services LLC who is the foreclosing beneficiary through MERS. **However**, the investigation report afforded herein, and MERS database, discloses the existence of conflicting beneficiaries. See: **Page #7 of the Investigation Report afforded herein, under Conflicting Beneficiaries.**

23.     MERS identification number (MIN) of 1000165-0000527068-0 as referenced in the Deed Of Trust discloses **CitiBank, N.A.** as the beneficiary most likely of a securitized trust. Therefore, there exist two entities which may assert ownership of this loan with power of sale. If Aurora succeeds with foreclosure sale, CitiBank could also commence foreclose at a later date under the same security instrument.  What would happen then to any bona fide buyer who acquires the property through foreclosure? It is crucial at this point for judicial notice to determine just exactly who is the true and legal holder of Plaintiff's loan.

24.     Quiet title is proper and requested by Plaintiff because:
*Federal Rule of Civil Procedure 17(a)(1) which requires that an action must be prosecuted in the name of the real party in interest." See also, In re Jacobson, 402 B.R. 359, 365-66 (Bankr. W.D. Wash. 2009); In re Hwang, 396 B.R. 757, 766-67 (Bankr. C.D. Cal. 2008).*

25.     **MOREOVER, pursuant to:**

### *California Civil Code Section 2934a*
*(a)  (2) A substitution executed pursuant to subparagraph (B) of paragraph (1) is not effective unless all the parties signing the*

---

7

**SECOND AMENDED COMPLAINT**

**Plaintiffs CLAUDIO AGUIRRE ("Plaintiff") respectfully submits the following:**

Plaintiff is proceeding pro se. Therefore, this Court must construe this claim liberally and hold it to a less stringent standard than the Court would apply to a pleading drafted by a lawyer. **See: Laber v. Harvey, 438 F.3d 404, 413 n. 3 (4th Cir. 2006).**

**PLAINTIFF IS UNCONDITIONALLY RELYING ON THESE (4) PRECEDENT RULINGS AND ON A FORECLOSURE PROCESS INVESTIGATION REPORT AFFORDED HEREIN, FOR NON-DISMISSAL OF THIS SECOND AMENDED COMPLAINT. PLAINTIFF RESPECTFULLY INFORMS THIS COURT OF A FORECLOSURE PROCESS REVIEW CURRENTLY BEEN CONDUCTED BY THE OFFICE OF THE COMPTROLLER OF CURRENCY ON SUBJECT PROPERY.**

a) Picking v. Pennsylvania Railway, (151 F2d. 240) (N.J. is in 3r Cir.)Third Circuit Court of Appeals. In Picking , the plaintiffs civil rights was 150 pages and described by a federal judge as "inept." Nevertheless, it was held: Where a plaintiff pleads pro-se in a suit for protection of civil rights, the court should endeavor to construe plaintiffs pleading without regard to technicalities.

b) In Walter Process Equipment v. Food Machinery 382 U.S. 172 (1965) it was held that in a "motion to dismiss, the material allegations of the complaint are taken as admitted." From this vantage point, courts are reluctant to dismiss complaints unless it appears the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. **(see Conley vs. Gibson, 355 U.S. 41 (1957).**

c) In Puckett v. Cox, it was held that a pro-se complaint requires a less stringent reading than one drafted by a lawyer (456 F2d 233 (1972 Sixth Circuit USCA) said Justice Black in Conley v. Gibson, 355 U.S. 41 at 48 (1957) "The Federal Rules rejects the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."

**According to rule 8(f) FRCP** all pleadings shall be construed to do substantial justice." To dismiss a civil rights action or other lawsuit in which a serious factual pattern or allegation of a cause of action has been made would itself be violative of procedural due process as it would deprive a pro-se litigant of equal protection of the law visa vis a party who is represented by counsel.

**In a fair system**, victory should go to a party who has the better case, not the better representation

d) In Trensey v. Pagliaro, Statements of council in briefs or on oral arguments are not facts before this court.

**THEREFORE:**

Plaintiff, CLAUDIO AGUIRRE (hereinafter "Plaintiff") for this Complaint against Defendants CAL-WESTERN RECONVEYANCE CORPORATION (hereinafter "Cal-Western Reconveyance Corporation"), AURORA LOAN SERVICES, INC.(hereinafter "Aurora Loan

---

2

**SECOND AMENDED COMPLAINT**

(E) a trustee of an express trust;
(F) a party with whom or in whose name a contract has been made for another's benefit; and
(G) a party authorized by statute.

Defendants are non of the above.

42.   Cal-Western Reconveyance Corporation, Aurora Loan Services, Inc. and Mortgage Electronic Recording Systems, do not qualify as entities that fulfill the requirements to sue or foreclose pursuant to the Federal Rules of Civil Procedure 17*(a)(1)*; 17*(a)(1)* (A); 17*(a)(1)* (B); 17*(a)(1)* (C); 17*(a)(1)* (D); 17*(a)(1)* (E); 17*(a)(1)* (F) and 17*(a)(1)* (G).

43.   **FURTHEREMORE:** "Standing to sue" means that party has sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.
Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct.1361, 1364, 31 L.Ed.2d 636.

Standing is a jurisdictional issue which concerns power of federal courts to hear and decide cases and does not concern ultimate merits of substantive claims involved in the action.
Weiner v. Bank of King of Prussia, D.C.Pa., 358 F.Supp. 684, 695.

The doctrine emanates from the case or controversy requirement of the Constitution and from general principles of judicial administration, and seeks to insure that the plaintiff has alleged such a personal stake in the outcome of the controversy as to assure concrete adverseness.
Campaign Clean Water, Inc. v. Ruckelshaus, D.C.Va., 361 F.Supp. 689, 692.

Standing is a requirement that the plaintiffs have been injured or been threatened with injury by governmental action complained of, and focuses on the question of whether the litigant is the proper party to fight the lawsuit, not whether the issue itself is justiciable.
Carolina Environmental Study Group, Inc. v. U. S.
Atomic Energy Comm., D.C.N.C., 431 F.Supp. 203, 218.

Essence of standing is that no person is entitled to assail the constitutionality of an ordinance or statute except as he himself is adversely affected by it.
Sandoval v. Ryan, Colo.App., 535 P.2d 244, 247.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Enforcement of **Federal Rule of Civil Procedure 17;**

b) Prevent Defendants from moving forward with the unlawful foreclosure process; deny motion to dismiss due to lack of Standing.

c) Awarding such other and further relief as the Court may deem just and proper for injuries caused to Plaintiff.

<u>**SECOND CAUSE OF ACTION**</u>

**SECOND AMENDED COMPLAINT**

(i) Defendants, AURORA LOAN SERVICES INC., Mortgage Electronic Recording System and Cal-Western Reconveyance Corporation violated 15 U.S.C. §1692f(6) taken or threatened to unlawfully repossess or disable the consumer's property.

(j) Defendants, AURORA LOAN SERVICES INC., Mortgage Electronic Recording Systems and Cal-Western Reconveyance Corporation violated 15 U.S.C. §1692g by, within five days after the initial communication with Plaintiff in connection with the collection of any debt, failing to send Plaintiff a written notice containing a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

WHEREFORE, Plaintiff demands judgment against AURORA LOAN SERVICES, INC. for improper accounting and application of Plaintiff's mortgage payments and for actual, statutory, treble and/or punitive damages, and attorney's fees and costs, along with any other and further relief as the court deems just and proper, pursuant to 12 U.S.C. §2605.

### THIRD CAUSE OF ACTION
### VIOLATION OF RESPA 12 USC § 2605; 12 USC § 2607)
**(Against, Cal-Western Reconveyance Corporation, Aurora Loan Services, Inc., Mortgage Electronic Recording Systems)**

47.   Plaintiff incorporates here each and every allegation set forth above.

48.   Plaintiff is informed and believes and thereon alleges that in the State of California a loan or NOTE can only be transferred by the delivery of possession; thus, the right to enforcement of the NOTE is only transferable by delivery and endorsement of the NOTE itself by the transferor.

49.   Defendants Cal-Western Reconveyance Corporation and Aurora Loan Services, Inc. did not notify Plaintiff in writing of any assignment, sale, or transfer of the servicing of the loan to any other person or entity.

50.   As a result of Defendants' failure to comply, Plaintiffs have suffered harm because Plaintiff was sending payments to entity/s who DID NOT have the right to collect on the loan and the payments were not being properly applied thus giving the appearance that Plaintiff were late or not making their payments.

---

**SECOND AMENDED COMPLAINT**

## VIOLATION OF RESPA 12 USC § 2607

### *(Against Cal-Western Reconveyance Corporation; Aurora Loan services.)*

51.    Plaintiff incorporates here each and every allegation set forth above.

52.    Plaintiff is informed and believes and thereon allege Defendant SERVICER Aurora Loan Services, Inc. violated RESPA because Defendant paid fees, or kickbacks, or a thing of value pursuant to an agreement or understanding, oral or otherwise, and such business was incident to or was a part of Defendants' real estate settlement service in connection with a federally related mortgage. Plaintiff believes he paid a real estate broker affiliated with Defendants in connection with the loan on this Property and Plaintiff discovered, after his loan was closed.

53.    Plaintiff believes he paid a real estate broker affiliated with Defendant Alleged Servicer in connection with the loan on this Property and Plaintiff discovered, after his loan was closed, hidden fees were paid to third parties.

54.    The doctrine of equitable tolling applies to any statute of limitations affirmative defense because Plaintiff could not have known about Defendants fraudulent conduct in time to bring a cause of action within the stated statute of limitations period.

55.    Defendant SERVICER Aurora Loan Services, Inc. were uncooperative and refused to discuss or give Plaintiff a modification or a loan work out agreement.

56.    Plaintiffs became skeptical due to Defendant SERVICER Aurora Loan Services, Inc. uncooperative behavior and began investigating the initial loan documents.

57.    In conducting this research, Plaintiff became suspicious that the amount alleged due and owing contained hidden fees which were not disclosed. Plaintiff then hired a forensic auditor, which indicated kickbacks and/or undisclosed fees may have been included. ( **Mortgage Document Examination & Investigation Report afforded herein.)**

58.    Defendant SERVICER , Aurora Loan Services, Inc. did not make the necessary disclosures clearly and conspicuously in writing, failed to timely deliver certain notices to Plaintiff as required by statute, placed terms prohibited by statute into the

---

15

**SECOND AMENDED COMPLAINT**

**Violations of the Fair Debt Collection Practices Act. 15 U.S.C. § 1692g and 15 USC § 1692f.**
(Against,Cal-Western Reconveyance Corporation,Aurora Loan Services, Inc.,
Mortgage Electronic Recording Systems)

44.   Plaintiff incorporates here each and every allegation set forth above.

45.   Adjudging that Defendant violated the FDCPA.

46.   Defendants AURORA LOAN SERVICES, INC. and Cal-Western Reconveyance Corporation violated the FDCPA. Defendants' violations include 15 U.S.C. § 1692g and 15 USC § 1692f, but are not limited to the following:

    (a) Defendants, AURORA LOAN SERVICES INC., Mortgage Electronic Recording Systems and Cal-Western Reconveyance Corporation,violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person.

    (b) Defendants, AURORA LOAN SERVICES INC., Mortgage Electronic Recording Systems and Cal-Western Reconveyance Corporation violated 15 U.S.C. §1692e(2) by falsely representing the character, amount, or legal status of any debt.

    (c) Defendants, AURORA LOAN SERVICES INC., Mortgage Electronic Recording Systems and Cal-Western Reconveyance Corporation violated 15 U.S.C. §1692e(6) by sale or transfer of any interest in the debt will cause the consumer to lose any claim or defense to payment of the debt.

    (d) Defendants, AURORA LOAN SERVICES INC., Mortgage Electronic Recording Systems and Cal-Western Reconveyance Corporation violated 15 U.S.C. §1692e(8) by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

    (e) Defendants, AURORA LOAN SERVICES INC., Mortgage Electronic Recording Systems and Cal-Western Reconveyance Corporation violated 15 U.S.C. §1692e(10) by the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

    (f) Defendants, AURORA LOAN SERVICES INC., Mortgage Electronic Recording Systems and Cal-Western Reconveyance Corporation violated 15 U.S.C. §1692e(11) by the failure to disclose in the initial written communication with the consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector.

    (g) Defendants, AURORA LOAN SERVICES INC., Mortgage Electronic Recording Systems and Cal-Western Reconveyance Corporation violated 15 U.S.C. §1692e(14) by the use of any name other than the true name of the debt collector's business.

    (h) Defendants, AURORA LOAN SERVICES INC., Mortgage Electronic Recording Systems and Cal-Western Reconveyance Corporation violated 15 U.S.C. §1692f(1) by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

13

SECOND AMENDED COMPLAINT

of, paid actual consideration for, and having proper endorsement of the NOTE is not the foreclosing beneficiary.

**78.**   Plaintiff is informed and believe and thereon allege any documents endorsed by AURORA LOAN SERVICES, INC., and Cal-Western without having physical possession of the NOTE or having permission from the lender who is in physical possession of the NOTE at the actual time the document or documents were endorsed by AURORA LOAN SERVICES, INC., and Cal-Western are invalid, void and legally unenforceable. Accordingly, Plaintiff remains the true owner of the Property.

**79.**   Plaintiff does not owe an enforceable obligation to any of the named Defendants at the time of the alleged default that would legally allow Defendants to conduct the non-judicial foreclosure sale.

**80.**   In view of the foregoing, Plaintiff alleges none of the Defendants at all relevant times, are or were the holders in due course of the NOTE and MORTGAGE. Therefore, Defendants have no legal right, authority, standing or entitlement to declare a default or begin a non-judicial foreclosure as prescribed under Cal. Civ. Code §2924.

**81.**   Plaintiff further alleges because the debt was never verified, there was no default. Moreover, Plaintiff is informed and believes and thereon allege the underlying calculations of the debt were inaccurate, there were unauthorized fees included in the amount needed to bring Plaintiff's account in good standing, and such over charges were deliberate, which is why the debt was not validated. Thus there is no valid and legal justification for Defendants to initiate the non-judicial foreclosure sale on the Property.

**82.**   Defendant AURORA LOAN SERVICES,INC., by not properly assigning their power of sale via an acknowledged and recorded assignment, is allowing Defendant SUCCESSOR TRUSTEE CAL-WESTERN to wrongfully foreclose on Plaintiff's property.

**83.**   Defendant AURORA LOANS SERVICES, INC., does not have the proper authority to assign the power of sale via an acknowledged and recorded substitution of Trustee because they **are not the Real Party in Interest and donot** have physical possession of the NOTE, have not paid actual consideration for the NOTE and/or do not have proper endorsement of the NOTE.

**84.**   Defendant SERVICER AURORA LOAN SERVICES, INC., falsely represented that it has the

---

19

**SECOND AMENDED COMPLAINT**

frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness and depression.

65.    As a result of the violations of defendants successor trustee cal- western, servicer Aurora Loan Servicing, Inc., plaintiff has been injured and is entitled to statutory damages in an amount to be determined at trial, actual damages according to proof, and costs of filing fees.

## FIFTH CAUSE OF ACTION
### RICO--18 U.S.C. §§ 1961 et seq.
*(Against Cal-Western Reconveyance Corporation; Aurora Loan Services, Inc.; Joe Krasovic; Shannon K. Mottola and Rhonda Rorie)*

66.    Plaintiff incorporates here each and every allegation set forth above.

67.    The court is well aware that it may not compel a civil RICO plaintiff to "plead essentially evidence and prove the case in the complaint."   *See: Haroco, Inc. v. American National Bank and Trust Co.*, 747 F.2d 384, 404 (7th Cir.1984)

68.    Defendants: Cal-Western Reconveyance Corporation; Aurora Loan Services.Inc.; Joe Krasovic; Shannon K.Mottola; Rhonda Rorie; all in concert form an enterprise engaged in and the activities of which affect interstate commerce.

69.    Defendants are persons within the meaning of 18 U.S.C. § 1961(3), and as persons associated with AURORA LOAN SERVICES.INC., conducted and participated, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity in violation of 18 U.S.C.A. § 1962(c).

70.    The predicate acts which constitute this pattern of racketeering activity were part of a scheme to wrongfully foreclose upon the Property without legal right, and subsequently acquire title to the Property through deception and fraud, for the profit of the enterprise, as described herein. For the purpose of executing this scheme, the Defendants placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the Postal service or commercial interstate carriers, including, but not limited to, default and foreclosure related notices. These notices were forged, false, misleading, and contrary to law, as described herein; and were deliberately designed to either to part with large sums of money or to force Plaintiff to abandon the Property, for the profit of the enterprise.

17

## SECOND AMENDED COMPLAINT

**71.** For the purpose of executing this scheme to defraud Plaintiff and obtain money by means of false pretenses, Defendants also transmitted and received messages by wire, including but not limited to telephone and internet communications. In such communications, Defendants sought to convince Plaintiff to abandon the Property, for the profit of the enterprise asserting the falsehood that Defendants had the right to foreclose upon the security interest in the Property.

**72.** These acts of racketeering, occurring within ten years of one another, constitute a pattern of racketeering activity within the meaning of 18 U.S.C.A. § 1961(5).

**73.** Plaintiff was injured by reason of this violation of 18 U.S.C. § 1962,. in that, as a direct and proximate result of Defendants' complained of acts, Plaintiff has suffered and continues to suffer damages, including but not limited to, monetary damages, and emotional distress, in an amount to be proven at trial.

**74.** By reason of the Defendants' violation of 18 U.S.C.A. § 1962, Plaintiff is entitled, pursuant to 18 U.S.C.A. § 1964(c), to threefold the damages sustained, costs of suit, and filing fees.

<u>**SIXTH CAUSE OF ACTION**</u>
<u>**DECLARATORY RELIEF**</u>
*(Against Cal-Western Reconveyance Corporation; Aurora Loan Services,inc., Inc. ;MERS;*
*Joe Krasovic; Shannon K. Mottola; Rhonda Rorie)*

**75.** Plaintiff re-allege and incorporate by reference under this cause of action each and every allegation made in each and every Paragraph above, as if fully set forth hereunder.

**76.** Plaintiff request for Declaratory relief is unique from other claims because it seeks to determine all parties' present and future rights and obligations under the NOTE and in relation to the property. Declaratory relief defining each parties' rights is required to "guide future conduct" and to avoid further lawsuits. This is distinct from Plaintiff's other claims which seek general, special, statutory, punitive and exemplary damages; to quiet title.

**77.** Plaintiff is informed and believes and thereon allege the original NOTE and/or DEED OF TRUST have been bundled and sold in a pool to investors as Mortgage Backed Securities and the true owner of the NOTES and DEED of TRUST, having physical possession

---

18

**SECOND AMENDED COMPLAINT**

borrower's right to rescind, specifying the date on which the three-day rescission period expires under 15 U.S.C. § 1635.

92.     In the course of the transaction described herein, Defendants SERVICER violated TILA in numerous ways, including, but not limited to: failing to provide required disclosures prior to consummation of the transaction; failing to make required disclosures clearly and conspicuously in writing; failing to timely deliver to Plaintiff certain notices required by statute; placing terms prohibited by statute into the transaction; and failing to disclose all actual finance charges as required under 15 U.S.C. §§. 1631 and 12 C.F.R. § 226.18(e). Specifically, Plaintiff alleges that Defendants failed to disclose annual percentage rates required under 15 U.S.C. §1639 (a), rate increases, payment schedules, the number and amounts of payments made by Plaintiff, and any charges for late payments, under 12 C.F.R.§ 226.18.

93.     Failure To Provide A Material Disclosure (**"statement of Loan Auditor"**) I have determined that the borrower was in possession of all documents that were provided at consummation of this loan. I have noted that the borrower was not provided an Estimated Settlement Statement (HUD-1 or HUD-1A) disclosing the costs and fees the borrower can expect to pay at closing. Failure to provide this disclosure also undermines the ability to insure compliance with CFR §226.18 and CFR § 226.23 (i) which sets the limits of finance charge differentials and, CFR § 226.19 which limits the APR differentials. Failure to provide this disclosure at loan consummation disables the consumer's right to challenge any or all charges the borrower will pay after final closing of the loan and thereby possibly rendering the loan voidable.( **See: page 3 of Mortgage Document Examination & Investigation Report afforded herein).**

94.     Plaintiff further alleges Defendants failed to notify Plaintiff of assignment of the loan to third parties as required by 15 U.S. C. 1641 (g). This statute provides for the liability of assignees for failing to provide adequate disclosures to the borrower, and provides that the new creditor must provide the borrower with notice of the assignment. Plaintiff maintain that they never received any correspondence setting forth who funded the loan, whether the loan was sold, assigned and/or securitized, in violation of TILA.

95.     The statute requires creditors to consider "the consumers' repayment ability, including the consumers' current and expected income, current obligations; and employment." 15 U.S.C. 1939 (h).

---

21

**SECOND AMENDED COMPLAINT**

transaction and failed to disclose all finance charge details including annual percentage rates to Plaintiff.

59.   Pursuant to **RESPA § 3500.10 - One-day advance inspection of HUD–1 or HUD–1A settlement statement; delivery; record keeping. (a) Inspection one day prior to settlement upon request by the borrower. The settlement agent shall permit the borrower to inspect the HUD–1 or HUD–1A settlement statement, completed to set forth those items that are known to the settlement agent at the time of inspection, during the business day immediately preceding settlement.( See: Mortgage Document Examination & Investigation Report afforded herein).**

60.   **Failure To Provide One Day Inspection** – Pursuant to this section, the Settlement Agent must offer, at the request of the borrower, a one day inspection prior to the settlement of the transaction. "Settlement," as defined, means "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan." The Loan Auditor noticed that the borrower (plaintiff) in this transaction was not informed of his right to an advanced copy, nor offered an advance review of the final settlement statement prior to executing the legally binding documents. (See: **Mortgage Document Examination & Investigation Report afforded herein**).

### FOURTH CAUSE OF ACTION
### CALIFORNIA ROSENTHAL ACT
*(Against Cal-Western Reconveyance Corporation; Aurora Loan Services, Inc.)*

61.   Plaintiff incorporates here each and every allegation set forth above.

62.   Defendants' actions constitute a violation of the Rosenthal Act.

63.   Defendants SUCCESSOR TRUSTEE CAL- WESTERN, AURORA LOAN SERVICES,INC., threatened to take actions not permitted by law, including but not limited to: foreclosing upon a void security interest; foreclosing upon a NOTE of which they were not in possession nor otherwise entitled to payment; falsely stating the amount of a debt; increasing the amount of a debt by including amounts that are not permitted by law or contract; and using unfair and unconscionable means to attempt to collect a debt.

64.   The actions of Defendants SUCCESSOR TRUSTEE CAL- WESTERN, SERVICER AURORA LOAN SERVICES,INC., have caused Plaintiff actual damages, including, but not limited to: severe emotional distress, including, but n ot limited to, loss of appetite,

**SECOND AMENDED COMPLAINT**

96.     Because of these violations, Plaintiff has a continuing right to rescind. Plaintiff hereby gives notice of rescission by and through this Complaint. Because of these violations, Defendant are liable to Plaintiffs in the amount of twice the finance charge, actual damages to be established at trial, and costs in accordance with 15 U.S.C. § 1640(a).

97.     Plaintiffs are also entitled to: rescission of the loan transaction; an order requiring Defendants AURORA LOAN SERVICES.INC., to take all actions necessary to terminate any security interest in the Property created under the transaction and a declaration by the Court that the security interest is void; expungement of any foreclosure instruments, including but not limited to any Notice of Default or Notice of Trustee's Sale, relating to the transaction from any public record; removal of any derogatory information reported to any credit reporting agency or credit reporting bureau relating to the transaction; the return to Plaintiff of any money given by Plaintiff to anyone, including Defendants, in connection with the loan transaction; statutory damages; costs and such other relief as the Court may deem just and proper.

Plaintiff did not have a reasonable opportunity to discover the fraud and/or nondisclosure of the Defendants to assert his TILA claim, because Defendants failed to provide the required disclosures prior to the consummation of the transaction with Plaintiff.

98.     Plaintiff is un-informed and unsophisticated consumers, Plaintiff did not have a reasonable opportunity to discover the fraud and/or nondisclosure of Defendant: AURORA LOANS SERVICES, INC., until Plaintiff began to default on his loan as a result of these nondisclosures.

99.     Plaintiff's claim survives any affirmative statute of limitations defense because equitable tolling applies to the claim.

100.    As a result of Defendants' misconduct, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial, which Plaintiff is entitled to recover. Moreover, Defendants' misconduct was willful, malicious, and outrageous, and therefore punitive damages are warranted and demanded.

101.    As a result of Defendants' misconduct, the loan was void and unenforceable as of its inception, and therefore Plaintiff is entitled to rescind the loan agreement and promissory note and do hereby demand rescission.

102.    As a result of Defendants' misconduct, Plaintiff is entitled to declaratory and injunctive

**SECOND AMENDED COMPLAINT**

1   power to collect payments on the MORTGAGE when there are no documents to show the rights

2   under the NOTE.

3   85.   Accordingly, Plaintiff desires a judicial determination of each Defendants rights, obligations

    and duties, and a declaration as to who the actual owner of the NOTE and MORTGAGE is.

4   Whether Defendant AURORA LOAN SERVICES, INC., has the right to assign its power of sale; and

5   whether Defendants SERVICER AURORA LOAN SERVICES, INC., and TRUSTEE CAL-

6   WESTERN has the right to legally foreclose on the property;  This are essential determinations which

7   will affect the Court's judicial declaration as to the current controversy which exists between all

8   parties.

9   86.   Plaintiff humbly request the court upon such finding, issue appropriate orders regarding

10  the recording of the Notice of Default, and subsequent Notice of Trustee's Sale, and whether

11  any Defendants have any right or interest in the property to record such instruments and

12  complete the non-judicial foreclosure sale.

13  87.   Plaintiffs humbly request the court, in determining who the actual holder in due course of

    the NOTE is, require Defendants to physically produce the Original Note and Chain of Title,

14  and validate that real consideration was paid for the NOTE and MORTGAGE, and not merely

15  produce a copy of the NOTE.

16  88.   A judicial declaration is necessary and appropriate at this time under the circumstances in

17  order for Plaintiff and all Defendants to ascertain their rights obligations and duties under

18  the NOTE and the Property.

19                      **SEVENTH CAUSE OF ACTION**
              **VIOLATION OF TILA 15 U.S.C. §§ 1601, 1631, 1635, 1639, 1640, 1641**
20            *(AGAINST DEFENDANT;SERVICER AURORA LOAN SERVICES, INC.)*

21  89.   Plaintiff incorporates here each and every allegation set forth above.

22  90.   The loan transaction at issue is a consumer credit transaction subject to the provisions of

23  TILA. Defendant  SERVICER is a "creditor" as that term is defined by 15 U.S.C. §1601. The

24  transaction between Plaintiff and Defendant SERVICER was a consumer loan transaction

25  wherein the Defendant extended credit to Plaintiff and such credit was secured by an interest

    purportedly held by Defendants in the Property.

26  91.   As a consumer credit transaction, Defendant SERVICER was required to provide

27  Plaintiff with a mandatory Truth-in-Lending disclosure statements and notice of the

28

---
                                   20

                    **SECOND AMENDED COMPLAINT**

**109.**   Defendants SERVICER AURORA LOAN SERVICES, INC., and SUCCESSOR TRUSTEE CAL-WESTERN wrongfully brought a foreclosure action against Plaintiff indicating Defendant's claim of right to foreclose which is adverse to Plaintiff. Defendant's claims are without any right whatsoever and SERVICER AURORA LOAN SERVICES,INC., and SUCCESSOR TRUSTEE CAL-WESTERN have no right, lien or interest whatsoever in the above-described Property or any part thereof.

**110.**   Title is clouded because Defendants' wrongfully are trying to exercise a power of sale under a Deed of Trust securing a Note under which the Plaintiff is the original party and Defendants SERVICER AURORA LOAN SERVICES,INC., and SUCCESSOR TRUSTEE CAL-WESTERN are not. The Note is a creature of contract and Defendants; SERVICER AURORA LOAN SERVICES,INC., and SUCCESSOR TRUSTEE CAL-WESTERN have no privity of Contract. Defendants' wrongfully are trying to foreclosure.

**111.**   <u>**Plaintiff seeks to quiet title as of the date of this second Amended Complaint filed, December 6, 2011.**</u>

## NINTH CAUSE OF ACTION
### MAIL FRAUD 18 USC § 1341, INTENTIONAL FRAUD, FRAUD UPON THE COURT, NOTARY FORGERY, RECORDATION OF UNLAWFUL AND VOID INSTRUMENTS IN THE LOS ANGELES COUNTY RECORDS.
*(Against Cal-Western Reconveyance Corporation; Aurora Loan Servicer, Inc. ;MERS; Joe Krasovic; Shannon k. Mottola; Rhonda Rorie)*

**112.**   Plaintiff incorporates here each and every allegation set forth above.

**113.**   As alleged herein, Defendants Cal-Western Reconveyance Corporation;Aurora Loan Services, Inc.; MERS ; Joe Krasovic ; Shannon k. Mottola; Rhonda Rorie and each of them, all in concert have committed Mail Fraud by working in concert and knowingly signing , fabricating fraudulent documents, notarizing fraudulent documents without the proper notarization in person and on the notary journal and knowingly; that documents were going to be recorded in the Los Angeles County Recorders Office and subsequently sending via US Mail; all this violations occurring with Knowledge of California Penal Code Section 115.

**114.**   **USC § 1341. Mail Fraud And Swindles - Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations; - by placing in any post office or authorized**

depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier; - shall be fined under this title or imprisoned not more than 20 years, or both.

115.   **Mailing Fraudulent And Deceitful Documents** ("statement of Loan Auditor") Pursuant to the discoveries made during this investigation regarding the various instruments containing either forgery, fraud, or other deceitful acts or malfeasance, I have noted that these instruments have all been placed in the US Mail or other form of delivery to various individuals and institutions including local government recording offices. It is my belief that these acts constitute mail fraud as cited in USC § 1341 above. Furthermore, a conspiracy to commit mail fraud by all parties named on those instruments exists because of the common knowledge of such wrongdoing and the supervisory responsibilities over employees. **(See: page 9 of Mortgage Document Examination & Investigation Report afforded herein).**

116.   Defendant  CAL- WESTERN and all Defendants knew all this fraud was taking place; THEREFORE they are all guilty of all counts herein alleged by Plaintiff against them.

117.   **THE REAL QUESTION IS; HOW MANY SIMILAR CASES ARE OUT THERE?....WITH INNOCENT PEOPLE LIVING ON THE STREETS THANKS TO PERSONS LIKE DEFENDANTS HEREIN.**

**TENTH CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA CIVIL CODE**
**§§ , 2923 (2)(b); 2924; 2924f (a)(b)(1); 2932.5; 2934 (a)(1)(A); 2934(a) (D) (4).**
*(Against Cal-Western Reconveyance Corporation; Aurora Loan Services, Inc.)*

.  Plaintiff incorporates here each and every allegation set forth above.

118.   Defendants **at are not** the Real Parties in Interest nor, the holders in due course of the NOTE and MORTGAGE. Therefore, Defendants have no legal right, authority, standing or entitlement to declare a default or begin a non-judicial foreclosure as prescribed under Cal. Civ. Code §2924.

119.   Pursuant to Cal Civ Code § 2924, only a beneficiary under the obligation secured by the deed of trust can effectuate a sale of the property and/or confer the power to another.

120.   Commencement of the foreclosure action without a recorded interest as required under California Civil Code 2932.5 is not valid.

25

**SECOND AMENDED COMPLAINT**

121.   Defendants Cal-Western and Aurora Loan Servicer Inc., failed to provide Plaintiff with a true copy of the Note pursuant to Cal. Civ. Code §2943.

122.   Plaintiff has not seen the true, correct, and complete copy of the NOTE or other evidence of indebtedness with any modification thereto, as defined in Cal Civ Code § 2943.

Why?.......Because Defendants are not the Real Parties In Interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for this court to enter judgment in favor of Plaintiff and against Defendants and each of them, jointly and collectively as follows:

A. For Defendants to cease foreclosure actions until The Office of The Comptroller of Currency concludes with the foreclosure process review;

B. For a declaration that Defendants are not the legal owners of the NOTE, Deed of Trust and have no right to initiate foreclose on Plaintiff's property;

C. For an order to Defendants to verify, validate the debt and to disclose the identity of the current holder of the mortgage;

D. For declaration of Defendants committing Mail Fraud;

E. For statutory damages;

F. For damages, disgorgement, and injunctive relief under common and statutory law of unfair business practices;

G. For an order quieting title;

H. For declaratory relief;

I. For an order restraining Defendants from conducting the trustee sale on Plaintiff's home until establishing unbroken chain of title.

## Plaintiff hereby demand a trial by jury on all issues so triable.

DATED: December 6, 2011

Respectfully submitted

By: Claudio Aguirre

26

SECOND AMENDED COMPLAINT

relief preventing Defendant AURORA LOAN SERVICES,INC., from taking any action to collect on the loan, and/or to foreclose upon the Property.

## EIGHTH CAUSE OF ACTION
## QUIET TITLE

*(Against Cal-Western Reconveyance Corporation; Aurora Loan Services; CitiBank.NA.)*

**103.**   Plaintiff incorporates here each and every allegation set forth above.

**104.**   Plaintiff is the sole owner of the property because there is no one who can claim otherwise and bring a clear, unbroken chain of title.

**105.**   Plaintiffs also names as defendants all persons unknown, claiming any legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to Plaintiff's title, or any cloud upon Plaintiff's title thereto.

**106.**   Plaintiff has a fee interest in the parcel of real property mentioned herein, MOREOVER Plaintiff, Claudio Aguirre at all times relevant has been resident of the County of Los Angeles, State of California and is the sole owner of the Real Property, including but not limited to the property at issue herein, which site address is:

*18740 VISTA DEL CANON, UNIT E79 , SANTA CLARITA, CALIFORNIA 91321-4531*
**APN: 2842-027-039   LOS ANGELES COUNTY**

**The Legal description is as follows:**

Lot: 4 Tract No: 44328 Abbreviated Description: LOT:4 CITY:REGION/CLUSTER: 01/01499 TR#:44328 TR=44328 LOT 4 CONDO UNIT 79 City/Muni/Twp: REGION/CLUSTER: 01/01499

**107.**   Plaintiff has offered to tender payment to the True Beneficiary that has paid actual consideration for the Note, currently is in possession of the Note, and has the proper endorsements on the Note. However, Plaintiff dispute that any money is owed to the foreclosing Defendants, therefore pursuant to the court's ruling in <u>Onofrio v. Rice</u> that "if the action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt," Plaintiff is not required to tender payment to any of the Defendants because to do so would cause Plaintiffs to acknowledge a debt is owed to the foreclosing Defendants, when there is no debt owed. **See:** Onofrio v. Rice, 55 Cal. App. 4th 413, (4 Dist, 1997).

**108.**   Plaintiff is seeking to quiet title against Defendants' claim of right to foreclosure and ownership of the above-described property; and thereby providing a fee interest in the property.

---

23

**SECOND AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ( EXHIBIT A )

DEED OF TRUST

**SECOND AMENDED COMPLAINT**

Fidelity National Title

Recording Requested By:
Tanya J. Lee

Return To:
Guaranty Bank, F.S.B.
P. O. Box 245022
Milwaukee, WI 53224
Attn: Doc Control Dept.

**05 1720926**

Prepared By:
Tanya J. Lee
6950 SW Hampton, #200
Tigard, OR  97223

/940/925

―――――[Space Above This Line For Recording Data]―――――

# DEED OF TRUST

MIN  100016500005270680

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated July 8, 2005
together with all Riders to this document.
(B) "Borrower" is Claudio Aguirre, a married man as his sole and separate
property.

Borrower's address is 28174 LANGSIDE AVENUE, CANYON COUNTRY
, CA  91321                                    . Borrower is the trustor under this Security Instrument.
(C) "Lender" is GN Mortgage, LLC. , a Wisconsin Limited Liability Company

Lender is a  Limited Liability Company
organized and existing under the laws of  Wisconsin

DOC  #:324541  APPL #:0010736981  LOAN #:0010736981  INV #:
CALIFORNIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  WITH MERS   Form 3005 1/01

-6A(CA) (0207)
Page 1 of 15   LMSO 0207.01    Initials:
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is  21731 Ventura Blvd., Ste. 200, Woodland Hills, CA  91364

(D) "Trustee" is  6700 Corporation, A California Corporation

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  July 8, 2005
The Note states that Borrower owes Lender  Two Hundred Forty Four Thousand and
No/100                                                                                      Dollars
(U.S. $ 244,000.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  August 1, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [x] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [v] Other(s) [specify] INTEREST-Only add. addendum TO ADJ. |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC  #:324542                    APPL #:0010736981                              LOAN #:0010736981

[VMP] -6A(CA) (0207)                    Page 2 of 16        Initials:            Form 3005 1/01

**05 1720926**

▲ **This page is part of your document - DO NOT DISCARD** ▲

## 05 1720926

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA**
## 07/21/05 AT 08:00am

# TITLE(S) :

▲ ▲



L E A D   S H E E T

FEE
FEE $79 - M
DAF $ 2
C-20                        25

D.T.T.

NOTIFICATION SENT $4 ◎

**CODE
20**

**CODE
19**

**CODE
9____**

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**
▲ ▲

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                                      of    LOS ANGELES                            :
                [Type of Recording Jurisdiction]                       [Name of Recording Jurisdiction]
SEE ATTACHED LEGAL DESCRIPTION.

## SEE EXHIBIT "A"
## ATTACHED

Parcel ID Number: 2842-027-039                        which currently has the address of
18740 Vista Del Canon E #79                                                  [Street]
NEWHALL                                             [City], California 91321       [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

DOC #:324543                    APPL #:0010736981                        LOAN #:0010736981
                                                          Initials:
⊗-6A(CA) (0207)                       Page 3 of 15                          Form 3005 1/01

05 1720926

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

DOC #:324545

APPL #:0010736981

LOAN #:0010736981

Initials:

-6A(CA) (0207)

Page 6 of 15

Form 3005   1/01

05  1720926

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

DOC #:324546                    APPL #:0010736981                                    LOAN #:0010736981

-6A(CA) (0207)                        Page 6 of 15          Initials:                    Form 3005 1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

DOC  #:324547                    APPL #:0010736981                              LOAN #:0010736981

Initials:

-6A(CA) (0207)                          Page 7 of 15                                Form 3005  1/01

05 1720926

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

DOC #:324544                      APPL #:0010736981                           LOAN #:0010736981

-6A(CA) (0207)                     Page 4 of 15                    Initials: _____    Form 3005  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

DOC #:324548      APPL #:0010736981      LOAN #:0010736981

-6A(CA) (0207)      Page 8 of 15     Initials:      Form 3005 1/01

05 1720926

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

DOC #:324549     APPL #:0010736981     LOAN #:0010736981

-6A(CA) (0207)     Page 9 of 15     Initials:     Form 3005 1/01

05 1720926

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

DOC #:324550

APPL #:0010736981

Initials:

LOAN #:0010736981

**-6A(CA)** (0207)

Page 10 of 15

Form 3005 1/01

05 1720926

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

DOC #:324551          APPL #:0010736981                    LOAN #:0010736981

-6A(CA) (0207)              Page 11 of 15        Initials:        Form 3005 1/01

**05 1720926**

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC  #:324552

APPL #:0010736981

LOAN #:0010736981

VMP®-6A(CA) (0207)

Page 12 of 15

Initials:

Form 3005  1/01

05  1720926

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC #:324553                      APPL #:0010736981                                    LOAN #:0010736981

⦿ -6A(CA) (0207)                          Page 13 of 16              Initials:          Form 3005 1/01

05 1720926

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                   Claudio Aguirre        -Borrower


_____          _____ (Seal)
                                                          -Borrower


_____ (Seal)       _____ (Seal)
                -Borrower                                 -Borrower


_____ (Seal)       _____ (Seal)
                -Borrower                                 -Borrower


_____ (Seal)       _____ (Seal)
                -Borrower                                 -Borrower


DOC #:324554              APPL #:0010736981          LOAN #:0010736981

VMP -6A(CA) (0207)          Page 14 of 15            Form 3005 1/01

05 1720926

State of California
County of LOS ANGELES } ss.

On JULY 12, 2005 before me, S.F-BASTOW, NOTARY PUBLIC
personally appeared

Claudio Aguirre

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



S. F. BASTOW
Commission # 1339650
Notary Public — California
Los Angeles County
My Comm. Expires Feb 8, 2006

_____ (Seal)

DOC #:324555

APPL #:0010736981

Page 15 of 15

LOAN #:0010736981
Initials:

-6A(CA) (0207)

Form 3005 1/01

05 1720926

EXHIBIT "A"

A Condominium Comprised of:

PARCEL 1:

Unit 79 as shown and described in the Condominium Plan recorded May 17, 1989, as Instrument No. 89-793244, Official Records, of Los Angeles County, California.

PARCEL 2:

An undivided 1/48th interest in Lot 4 of Tract No. 44328, in the unincorporated territory of the County of Los Angeles, State of California, as per map recorded in Book 1129, Pages 82 to 86 inclusive of Maps, in the office of the County Recorder of said County.

EXCEPT Units 67 to 114 inclusive as shown and defined on the Condominium Plan above mentioned.

ALSO EXCEPT an undivided one-half interest in and to the oil and mineral rights, as reserved in the deed from Edward Small, a married man, and Elsie Small, his wife, recorded February 25, 1953, as Instrument No. 1999, in Book 41050, Page 328, Official Records.

ALSO EXCEPT all right, title and interest in all of the subsurface oil, gas, casinghead gas and other solid, liquid or gaseous hydrocarbons and other subsurface minerals as quitclaimed to Newhall Resources, a California limited partnership by document entitled "Mineral Deed" recorded March 31, 1983, as Instrument No. 83-352390, Official Records.

All of the surface and the subsurface t a depth of 500 feet from the surface and ingress and egress together with all drill thru rights have been quitclaim by deed dated March 27, 1986, executed by Newhall Resources, a California limited partnership, recorded April 2, 1986, as Instrument No. 86-405315, Official Records and re-recorded April 24, 1986, as IInstrumentNo 86-502563, Official Records.

ALSO EXCEPTING and reserving therefrom, all previously unreserved minerals, oil, gas, petroleum, other hydrocarbon substances and all underground water in or under or which may be produced from such lots which underlies a plane parallel to and 500 feet below the present surface of such lots for the purpose of prospecting for, the exploration, development, production, extracting and taking of said minerals, oil, gas, petroleum, other hydrocarbon substances and water from such lots by means of mines, wells, derricks or other equipment from the surface locations on adjoining or neighboring land or lying outside of the above-described lots, it being understood that the owner of such minerals, oil, gas petroleum, other hydrocarbon substances and water, as set forth above, shall have no right to enter upon the surface or any portions thereof above such plane parallel to and 500 feet below the present surface of such lots for any purpose whatsoever, as reserved by the Anden Group, a California limited partnership, by deed recorded March 30, 1992, as Instrument No. 92-539378, Official Records.

PARCEL 3:

Nonexclusive easements for access, ingress, egress, use, enjoyment, drainage, encroachment, support, maintenance, repairs, and for other purposes, all as shown in the plan and as described in the Declaration.

PARCEL 4:

A nonexclusive easement for ingress and egress over the Common Area located in any phases of development annexed to Lot 9, such easement is appurtenant to Parcels Nos. 1

EXHIBIT "A"  Page 1 of 2   05 1720926



# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 8th day of July, 2005 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to GN Mortgage, LLC.

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:
18740 Vista Del Canon E #79, NEWHALL , CA
91321

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or
use of its members or shareholders, the Property also includes Borrower's interest in the
Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations
under the Condominium Project's Constituent Documents. The "Constituent Documents"
are the: (i) Declaration or any other document which creates the Condominium Project; (ii)
by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall
promptly pay, when due, all dues and assessments imposed pursuant to the Constituent
Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project
which is satisfactory to Lender and which provides insurance coverage in the amounts
(including deductible levels), for the periods, and against loss by fire, hazards included
within the term "extended coverage," and any other hazards, including, but not limited to,
earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the

DOC #:316681 APPL #:0010736981 LOAN #:0010736981 INV #:

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT UM50 0405

-8R (0411) Form 3140 1/01
Page 1 of 3 Initials:
VMP Mortgage Solutions, Inc.
(800)521-7291



05 1720926



provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

DOC #:316682          APPL #:0010736981               LOAN #:0010736981

Initials: _____

VMP-8R (0411)          Page 2 of 3                    Form 3140 1/01

05 1720926

EXHIBIT "A" – Page 2 of 2

and 2 described above and shall become effective as to each of such phases upon the close of escrow for the sale of condominium in such phase. The common area referred to herein as to each such phase shall be as described in the Declaration and in the Notice of Addition of Territory and Condominium Plan or plans for each of such phases, excepting therefrom any residential buildings.

Assessor's Parcel No: 2842-027-039

EXHIBIT "A" – Page 2 of 2

05 1720926

# ADJUSTABLE RATE RIDER

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 8th    day of    July, 2005    ,
and is incorporated  into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower")  to secure Borrower's Adjustable Rate Note (the "Note") to

GN Mortgage, LLC.

("Lender")  of the same date and covering the property described in the Security Instrument
and located at:

18740 Vista Del Canon E #79, NEWHALL, CA  91321

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of         6.375 %. The Note provides
for changes in the interest rate and the monthly payments, as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of  August, 2010         ,
and on that day every          6th        month thereafter. Each date on which my interest
rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for six month U.S. dollar-denominated
deposits in the London market ("LIBOR"), as published in The Wall Street Journal . The most
recent Index figure available as of the first business day of the month immediately
preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is
based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**    SEE ATTACHED INTEREST ONLY ADDENDUM TO ARM
RIDER Before each Change Date, the Note Holder will calculate my new interest rate by
adding XXXXXXXX XXXX XXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX percentage points X
(XXXXXXXXXX XXXXXXXXXXX%) to the Current Index. The Note Holder will then round the result XXXX
DOC #:328911 APPL #:0010736981 LOAN #:0010736981   INV #:
**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED
IN THE WALL STREET JOURNAL )**- Single Family - Fannie Mae Uniform Instrument

⊛-838R (0402)  Form 3138 1/01          UM50  0006.03
Page 1 of 3       Initials:
VMP Mortgage Solutions, Inc.
(800)521-7291

05 1720926

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)          _____ (Seal)
Claudio Aguirre            -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                     -Borrower


DOC #:316683              APPL #:0010736981           LOAN #:0010736981

-8R (0411)                 Page 3 of 3                 Form 3140 1/01

05 1720926



~~this addition to the maximum interest that I am required to pay (0.125%). Subject to the~~
~~limits stated in Section 4(D) below, this rounded amount will be my new interest rate until~~
~~the next Change Date.~~
~~The Note Holder will then determine the amount of the monthly payment that would be~~
~~sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full~~
~~on the maturity date at my new interest rate in substantially equal payments. The result of~~
~~this calculation will be the new amount of my monthly payment.~~

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than

    12.375 % or less than          6.375 %. Thereafter, my interest rate will

never be increased or decreased on any single Change Date by more than

Two                                                                    percentage points
(            2.000 %) from the rate of interest I have been paying for the preceding
    6      months. My interest rate will never be greater than          12.375 %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

DOC #:328912          APPL #:0010736981          LOAN #:0010736981
                                                 Initials:

VMP®-838R (0402)            Page 2 of 3                      Form 3138 1/01

05 1720926

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
Claudio Aguirre          -Borrower                                -Borrower


_____ (Seal)        _____ (Seal)
                         -Borrower                                -Borrower


_____ (Seal)        _____ (Seal)
                         -Borrower                                -Borrower


_____ (Seal)        _____ (Seal)
                         -Borrower                                -Borrower


DOC #:328913                APPL #:0010736981            LOAN #:0010736981
VMP-838R (0402)                      Page 3 of 3                  Form 3138 1/01

**05 1720926**

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

LOAN NUMBER:    0010736981

PROPERTY ADDRESS:    18740 Vista Del Canon E #79 , NEWHALL, CA 91321

**THIS ADDENDUM** is made this _____ 8th ____ day of ___ July, 2005 _____ , and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to _____
__GN Mortgage, LLC._____ (the "Lender").

**THIS ADDENDUM** supersedes Section 4(C) of the Rider.  None of the other provisions of the Note are changed by this Addendum.

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**      (C)    Calculation of Changes**

        Before each Change Date, the Note Holder will calculate my new interest rate by adding____ Two and Three Quarters _____percentage point(s)( __ 2.750 %) to the Current Index for such Change Date.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

        During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance.  At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note.  The result of this calculation will be the new monthly payment.  After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

Dated:  July 8, 2005 _____        _____
                                    Borrower  Claudio Aguirre

                                    _____
                                    Borrower

                                    _____
                                    Borrower

                                    _____
                                    Borrower

Form 603F
706961 01/04                         Page 1 of 1                              1/01

**05  1720926**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

# ( EXHIBIT B )

## ASSIGNMENT OF DEED OF TRUST

19
20
21
22
23
24
25
26
27
28

**SECOND AMENDED COMPLAINT**

7/21/05

## --ADDENDUM TO ADJUSTABLE RATE RIDER--

This addendum is made ____July 8, 2005_____ and is
incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The Property covered by this addendum is described in the Security Instrument and located at:
   18740 Vista Del Canon E #79, NEWHALL, CA  91321

### AMENDED PROVISIONS
In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as
follows:

### ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
   **Limits on Interest Rate Changes**
      The interest rate I am required to pay at the first Change Date will not be greater than ___12.375__ %
or less than _____6.375__ %. Thereafter, my adjustable interest will never be increased or decreased on any
single Change Date by more than ___Two____ percentage point (s) (_2.000___ %) from the rate of interest
I have been paying for the preceding six (6) months. My interest rate will never be greater than
___12.375__ % .My interest rate will never be less than _____6.375 %.

### TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
      Uniform Covenant 18 of the Security Instrument is amended to read as follows:
      **Transfer of the property or a Beneficial Interest in Borrower.** As used in this Section 18,
"Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to,
those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow
agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
      If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower
is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written
consent, Lender may require immediate payment in full of the sums secured by this Security Instrument.
However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
      If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall
provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within
which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior
to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without
further notice or demand on borrower.

      In Witness Thereof, Trustor has executed this addendum.

Witness
July 8, 2005
Date                              Borrower Signature    Claudio Aguirre

Date                              Borrower Signature

Date                              Borrower Signature

Date                              Borrower Signature
1202 LIBOR Addendum to Rider   707921 01/14/04
   App #:  0010736981  Loan #:  0010736981  INV #:

05 1720926

2

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

ASSIGNMENT PREP
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706


04/08/2011
*20110514903*

1209 857-14

**CORPORATE ASSIGNMENT OF DEED OF TRUST**

04 0243314

**Los Angeles, California**
**SELLER'S SERVICING #:0031259088 "AGUIRRE"**
**OLD SERVICING #: FC**

**MERS #: 100016500005270680 VRU #: 1-888-679-6377**

Prepared By: Traci Schneider, AURORA LOAN SERVICES 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE
69363-1706 308-635-3500

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR GN
MORTGAGE, LLC., A WISCONSIN LIMITED LIABILITY COMPANY ITS SUCCESSORS OR ASSIGNS hereby
grants, assigns and tranfers to AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE
69361 all beneficial interest under that certain Deed of Trust dated 07/08/2005 , in the amount of $244,000.00,
executed by CLAUDIO AGUIRRE, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY. to MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GN MORTGAGE, LLC., A WISCONSIN
LIMITED LIABILITY COMPANY and Recorded: 07/21/2005 In Book: N/A Page: N/A as Instrument No.: 05 1720926
in the County of Los Angeles, State of California

Assessor's/Tax ID No. 81771781

Therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and
all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR GN MORTGAGE, LLC., A
WISCONSIN LIMITED LIABILITY COMPANY ITS SUCCESSORS OR ASSIGNS
On November 8th, 2010 Effective Date: 4/21/09

JAN WALSH, Vice-President

SEAL
1995

"TRS"TRSALSI"1 1/08/2010 01:45:05 PM" ALSI01ALSIAO00000000000000067243" CALOS A* 0031259088 CASTATE_TRUST_ASSIGN_ASSN "TRSALSI"

4

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Nebraska
COUNTY OF Scotts Bluff

On November 8th, 2010, before me, LINDA D. PARKS, a Notary Public in and for Scotts Bluff in the State of Nebraska, personally appeared JAN WALSH, Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

LINDA D. PARKS
Notary Expires: 11/14/2011

GENERAL NOTARY - STATE OF NEBRASKA
LINDA D. PARKS
My Comm. Exp. 11/14/2011

(This area for notarial seal)

*TRS*TRSALS*11/08/2010 01:46:05 PM* ALS901ALSIA00000000000000000687243* CALOS A* 0031259068 CASTATE_TRUST_ASSIGN_ASSN **TRSALSI*

This page is part of your document - DO NOT DISCARD




# 20110514903




**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/08/11 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**LEADSHEET**

201104080240004

00004003813

003252979

**SEQ:**
**04**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

t35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ( EXHIBIT C )

## SUBSTITUTION OF TRUSTEE

---

33

**SECOND AMENDED COMPLAINT**

This page is part of your document - DO NOT DISCARD

## 20090900153



Pages:
0004



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/16/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**LEADSHEET**



200906160170009

00000708985

002156697

**SEQ:
27**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

135

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:



CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004

    

SPACE ABOVE THIS LINE FOR RECORDER'S USE

LOAN NO.: XXXXXX9088 T.S. NO.:   1209851-14
Mers Phone 1-888-679-6377 Min No: 1000165 0000527068 0

090263214

# SUBSTITUTION OF TRUSTEE
This Form Provided By Cal-Western Reconveyance Corporation

WHEREAS, CLAUDIO AGUIRRE A MARRIED MAN AS HIS SOLE AND SEPARATE
PROPERTY      was the original Trustor,

6700 CORPORATIONA CALIFORNIA CORPORATION
was the original Trustee,

and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR GN
MORTGAGE LLC A WISCONSIN LIMITED LIABILITY COMPANY      was the original
Beneficiary

under that certain Deed of Trust dated July 08, 2005 and recorded on July 21, 2005 as Instrument No.
05-1720926, in book XX, page XX of Official Records of LOS ANGELES County, California, and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS,
the undersigned desires to substitute a new Trustee under said Deed of Trust in the place and stead of
present Trustee thereunder, in the manner in said Deed of Trust provided.

NOW, THEREFORE, the undersigned hereby substitutes

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET, P.O. BOX 22004
EL CAJON CA 92022-9004

as Trustee under said Deed of Trust.

27

# SUBSTITUTION OF TRUSTEE

LOAN NO: _9088_

TS NO: _1209851-14_

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: _4-8-09_

**Mortgage Electronic Registration Systems, Inc. (MERS)**

Joe Krasovic
**Assistant Secretary of MERS**

STATE OF:   **California**
COUNTY OF:  **San Diego**

On _4-8-09_ before me, **Rhonda Rorie** _____, a Notary Public in and for said State, personally appeared Joe Krasovic, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

(Seal)

RHONDA RORIE
COMM. # 1667658
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm. Exp. May 16, 2010



## CAL-WESTERN RECONVEYANCE CORPORATION

T.S NO. _120985I-14_

LOAN NO. _9088_

## AFFIDAVIT OF MAILING SUBSTITUTION OF TRUSTEE
### PURSUANT TO CALIFORNIA CIVIL CODE §2934a

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

THE UNDERSIGNED BEING SWORN, SAY(S):

A COPY OF THE SUBSTITUTION OF TRUSTEE HAS BEEN MAILED, PRIOR TO OR CONCURRENTLY WITH THE RECORDING THEREOF, IN THE MANNER PROVIDED IN SECTION 2934a OF THE CIVIL CODE OF CALIFORNIA, TO ALL PERSONS TO WHOM A COPY OF THE NOTICE OF DEFAULT WOULD BE REQUIRED TO BE MAILED BY THE PROVISIONS OF SUCH SECTION.

Dated: **JUN 12 2009**

_____
Susan Meyers

State of California

County of San Diego

Subscribed and sworn to (or affirmed) before me on **JUN 12 2009** by Susan Meyers, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
Linda Jo Davis

LINDA JO DAVIS
Commission # 1708819
Notary Public - California
San Diego County
My Comm. Expires Dec 5, 2010

ASUB.DOC

Rev. 01 01 08

Cal-Western Reconveyance Corporation
525 East Main Street, El Cajon, California 92020 •P.O. Box 22004, El Cajon, California 92022-9004
TEL: (619) 590-9200 •FAX: (619) 590-9299 • Website: www.cwrc.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

$(\text{EXHIBIT}\textit{p})$

NOTICE OF DEFAULT

---

34

**SECOND AMENDED COMPLAINT**

**This page is part of your document - DO NOT DISCARD**



## 20090578487



Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/21/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 14.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 14.00 |



LEADSHEET



200904210140016

00000395607

002071150

SEQ:
04

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

T35

Recording Requested By
When Recorded Mail To

04/21/2009

*20090578487*

2

Cal-Western Reconveyance Corp.
P.O. Box 22004
525 East Main Street
El Cajon  CA  92022-9004

*1209851-14*  *NODXR*
Trustee Sale No. 1209851-14
090863314

Space Above This Line For Recorder's Use

Loan No. XXXXXX9088  Ref: AGUIRRE, CLAUDIO

# NOTICE OF DEFAULT

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice). This amount is $5,429.95 as of April 10, 2009, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC

C/O CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON        9004 CA 92022-9004
(619)590-9200

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Page 1 of 2

4



**Member**
**American College of Forensic Examiners Institute** SM

# Charles J. Horner & Associates
# Forensic Document Examiners
# 4045 Bonita Rd. Suite 211
# Bonita, CA. 91902

# Ph: 619-475-8412
# Fax: 619-475-8468

Copyright Warning – The contents of this report as to form, format, language, methods and attachments are the exclusive property of Charles J. Horner & Associates. Any copying, duplication, alteration, or recalculation herein and hereof without the written consent of Charles J. Horner & Associates is strictly prohibited.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.  Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**NOTICE IS HEREBY GIVEN:**

**CAL-WESTERN RECONVEYANCE CORPORATION is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a deed of trust dated July 08, 2005 executed by**

**CLAUDIO AGUIRRE A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY** as trustor, to secure certain obligations in favor of

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR GN MORTGAGE LLC A WISCONSIN LIMITED LIABILITY COMPANY as beneficiary**

recorded as document 05-1720926 on July 21, 2005 in book XX page XX official records in the office of County Recorder
of LOS ANGELES County, California, describing land therein as:

**COMPLETELY DESCRIBED IN SAID DEED OF TRUST**

said obligations including a promissory note for the principal sum of $244,000.00
that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Failure to pay the monthly payment due January 1, 2009 of principal and interest and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust.

That by reason thereof the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code ? 2923.5(b) declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code 2923.5.

**T.S. 1209851-14**
**Dated:**       **April 20, 2009**          **CAL-WESTERN RECONVEYANCE CORPORATION**

Signature By _Shanna K. Mottola_ 8/x
                        Shannon K. Mottola

# Examination Date: 11/29/2011

# Mortgage Document Examination & Investigation Report

# For

# Claudio Aguirre

# Address

# 18740 Vista Del Canon E
# Newhall, CA 91321

Copyright Warning – The contents of this report as to form, format, language, methods and attachments are the exclusive property of Charles J. Horner & Associates. Any copying, duplication, alteration, or recalculation herein and hereof without the written consent of Charles J. Horner & Associates is strictly prohibited

# Loan Information

## Broker

Savon Loan Group
16461 Sherman Way
Van Nuys, CA 91406

## Lender

GN Mortgage, LLC
21731 Venture Blvd, Ste 200
Woodland Hills, CA 91364

## Servicing

No
Monthly
Statement
Provided

## Loan Type

ARM
Purchase
Loan Amount: $244,000.00 @ 6.375%
Document Date: 07/08/2005
Close Date: 07/21/2005

**1. Sections** - There are various sections to the Examination which identifies the entity that section applies to. For example, the first section will typically be the Broker's section and identified by the broker's name if a broker was involved in the transaction. The sections between the entities are divided by two gray bars.

**2. Violations** - Violations discovered during the Examination are identified by a brief description of the statute or code which applies to the violation followed by a descriptive paragraph outlining the violation. The statute or code is in bold font and precedes the descriptive paragraph which is in normal font. There may be more than one relative law that applies to same violation. In this case, each law that applies is listed first with the descriptive paragraphs following.

**3. Referencing** – Each section is identified by the entity that the violations apply to. Each section begins a series of letters identifying the statute or the code. Example; the first statute or code would begin with (A) or (A1) if there is more than one statute or code connected with the violation. The descriptive paragraph following the statute(s) or code(s) is numbered. Example; 1. There may be more than one violation which applies to the same statutes or codes and therefore the descriptive paragraphs will be numbered accordingly. To reference a particular violation, you would note the statute such as; "under Lender (B2) paragraph 3."

**4. Gray Bars** – Each section that begins a new entity, or represents the last section before the final disclosures are divided by two gray bars. A single gray bar divides the series within a section. Example; under the broker's section, a single gray bar would divide the (A) series and (B) series. At the end of the section, two gray bars will began a new section preceding a different entity.

**5. Formats** – There are two formats offered for the Examination. The PDF format is the primary format provided to non-legal organizations or individuals. Both PDF and Word formats are provided to Attorneys.

**6. Exhibits** – Exhibits which support the findings of the Examination will be attached in the PDF format following the report. They will not be attached to the Word format if that format is requested by Attorneys.

## Disclaimer

The content of this report is for informational purposes only and is not to be construed as giving "legal advice." You are strongly advised to seek legal consultation from an attorney in connection with the content of this report. If you do not already have an attorney, you may visit our web site at www.thedocexaminer.com and view our nationwide list of attorneys. In such case where an attorney is involved, you are advised that additional fees may be charged by the attorney and those fees may only be discussed between you and the attorney. We do not quote nor provide estimates of those fees.

Claudio Aguirre                                                    Page 1

# Examination Report

# Savon Loan Group (Broker)

1. I was not provided with the broker's early disclosures for my examination. These disclosures are mandated under California Business And Professions Codes 10240-10248.3 10241, 12 C.F.R. 226.23(a) (3), 6500 - FDIC § 226.19, and Truth In Lending Act (15 USC 1601 et seq.). If you were not provided these disclosures within three business days from the date of the original loan application, you may be required to complete an affidavit testifying to that affect.

2. **Licensing-** I have investigated the broker's licensing status at the time of the consummation of this loan and have determined that the broker was properly licensed in the State of California under the Department Of Real Estate, and who's license number is 01402905 which expires on 02/27/12.

# GN Mortgage, LLC (Lender)

### Violations

**Attorney Note:** The listed exhibits below were not provided for our examination. Therefore, we could not examine the statutes applicable to those exhibits.

1. Final Settlement Statement or Estimated Settlement Statement, statutes not examined:

- Truth In Lending Act (15 USC 1601 et seq.). The purpose of TILA is to promote the informed use of consumer credit by requiring disclosures about its terms, cost to standardize the manner in which costs associated with borrowing are calculated and disclosed. TILA requires uniform or standardized disclosure of costs and charges so that consumers can shop and compare. Failure to provide and estimated HUD-1 of HUD-1A incorporating the charges and fees the consumer can expect to pay or misleading or misrepresentation of those costs and fees voids the consumer's ability to shop for comparable loan products that may be available through other lenders.

- Uniform Settlement Statement 24 C.F.R §3500.8 The HUD-1 and HUD-1A must be completed by the person (settlement agent) conducting the closing and must conspicuously and clearly itemize all charges related to the transaction.

**(Continued On Page 2)**

Page 3

**1. Understated APR -** The Truth-In-Lending Disclosure (Exhibit 1) discloses an APR of 6.799%. When calculating the APR using the lender's own figures, the actual APR is 6.902% (Exhibit 2). Therefore, the disclosed APR is understated by .1030%. Although this does not exceed the limit of 1/8 (.125%) pursuant to C.F.R. § 226.19, it nonetheless displays the lender's inaccuracy in providing meaningful disclosures of the cost of credit and impairs the borrower's ability to shop and compare.

Attorney Note: In lieu of a final or estimated settlement statement, we used the Truth In Lending Addendum (Exhibit 3) to calculate the finance charges for the purpose of determining the APR.

**(B) Truth In Lending Act (15 USC 1601 et seq.). The purpose of TILA is to promote the informed use of consumer credit by requiring disclosures about its terms, cost to standardize the manner in which costs associated with borrowing are calculated and disclosed. TILA requires uniform or standardized disclosure of costs and charges so that consumers can shop and compare. Misleading or misrepresentation of those charges voids the consumer's ability to shop for comparable loan products that may be available through other lenders. The regulation prohibits certain acts or practices in connection with credit secured by a consumer's principal dwelling.**

**1. Failure To Disclose –** The Truth-In-Lending Disclosure (Exhibit 2) states "This is a variable rate loan. Disclosures were provided to you earlier." However, I have noted that there is no evidence in the loan documents provided to me for my examination that the document titled "Adjustable Rate Program Disclosure" was ever provided to the borrower at any time either earlier or at consummation of this loan.

**2. Failure To Provide A Material Disclosure –** I have determined that the borrower was in possession of all documents that were provided at consummation of this loan. I have noted that the borrower was not provided an Estimated Settlement Statement (HUD-1 or HUD-1A) disclosing the costs and fees the borrower can expect to pay at closing. Failure to provide this disclosure also undermines the ability to insure compliance with CFR §226.18 and CFR § 226.23 (i) which sets the limits of finance charge differentials and, CFR § 226.19 which limits the APR differentials. Failure to provide this disclosure at loan consummation disables the consumer's right to challenge any or all charges the borrower will pay after final closing of the loan and thereby possibly rendering the loan voidable.

**Attorney Note:** "Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this title [15 U.S.C. §§ 1601 et seq.] by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof. 15 U.S.C. § 1635 (c).

**(Continued On Page 3)**

Claudio Aguirre

- 15 USC Section 1606 (c) Determination of annual percentage rate: Allowable tolerances for purposes of compliance with disclosure requirements. The disclosure of an annual percentage rate is accurate for the purpose of this subchapter if the rate disclosed is within a tolerance not greater than one-eighth of 1 per centum more or less than the actual rate or rounded to the nearest one-fourth of 1 per centum. The Board may allow a greater tolerance to simplify compliance where irregular payments are involved. **(Unable to calculated finance charges to reconcile the APR)**

- C.F.R. §226.18(d) & §226.23(h) The finance charge initially includes any charge that is, or will be, connected with a specific loan. Charges imposed by third parties are finance charges if the financial institution requires use of the third party. Charges imposed by settlement or closing agents are finance charges if the bank requires the specific service that gave rise to the charge and the charge is not otherwise excluded.

The possibility exists that the borrower was not provided with these disclosures at consummation of the loan. That being the case, it would be the oppositions burden of proof pursuant to the following;

"Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this title [15 U.S.C. §§ 1601 et seq.] by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof. 15 U.S.C. § 1635 (c).

**(A1) Truth In Lending Act (15 USC 1601 et seq.). The purpose of TILA is to promote the informed use of consumer credit by requiring disclosures about its terms, cost to standardize the manner in which costs associated with borrowing are calculated and disclosed. TILA requires uniform or standardized disclosure of costs and charges so that consumers can shop and compare. Misleading or misrepresentation of those charges voids the consumer's ability to shop for comparable loan products that may be available through other lenders. The regulation prohibits certain acts or practices in connection with credit secured by a consumer's principal dwelling.**

**(A2) 15 USC Section 1606 (c) Determination of annual percentage rate: Allowable tolerances for purposes of compliance with disclosure requirements. The disclosure of an annual percentage rate is accurate for the purpose of this subchapter if the rate disclosed is within a tolerance not greater than one-eighth of 1 per centum more or less than the actual rate or rounded to the nearest one-fourth of 1 per centum. The Board may allow a greater tolerance to simplify compliance where irregular payments are involved.**

**(Continued On Page 3)**

Claudio Aguirre

**1. Violation Of Rate Adjustments -** I have determined that page 2, paragraph (D), of the Adjustable Rate Note (Exhibit 4) states that "the rate will never be less than 6.375%." I have also noted that the interest rate will never be decreased by more than 2.00% from the rate of interest for the prior six months. By restricting the downward adjustment regardless of the downward movement of the index is in violation of this subsection and operates to question the enforceability of this Note.

**(F) FCRA 15 U.S.C. 1681 Section 212 Subsection 609(g) a lender must provide the following to the consumer as soon as reasonably practicable: 1. The current credit score of the consumer or the most recent credit score of the consumer that was previously calculated by the credit reporting agency for a purpose related to the extension of credit; 2.The range of possible credit scores under the model used; 3. All of the key factors that adversely affected the credit score of the consumer in the model used, the total number of which shall not exceed four (4), unless a key factor that adversely affects the consumer's credit score consists of the number of enquiries made with respect to a consumer report. In this case, then five (5) key factors may be listed; 4. The date on which the credit score was created and; 5. The name of the person or entity that provided the credit score or credit file upon which the credit score was created.**

**1. Failure To Disclose –** Pursuant to this section the lender must provide the most recent credit score the lender used to make an underwriting decision. I have noted that the lender did not provide the credit scores on the document titled "Credit Score Disclosure,"

# Settlement Agent

# <u>Unknown</u>

**(A) RESPA § 3500.10 - One-day advance inspection of HUD–1 or HUD–1A settlement statement; delivery; record keeping. (a) Inspection one day prior to settlement upon request by the borrower. The settlement agent shall permit the borrower to inspect the HUD–1 or HUD–1A settlement statement, completed to set forth those items that are known to the settlement agent at the time of inspection, during the business day immediately preceding settlement.**

**1. Failure To Provide One Day Inspection –** Pursuant to this section, the Settlement Agent must offer, at the request of the borrower, a one day inspection prior to the settlement of the transaction. "Settlement," as defined, means "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan." I have noted that the borrower in this transaction was not informed of their right to an advanced copy, nor offered an advance review of the final settlement statement prior to executing the legally binding documents.

**(Continued On Page 6)**

**(C) 6500 - FDIC Consumer Protection Paragraph 19 (b) (2) (viii). 2. Selection of index values. The historical example must reflect the method by which index values are determined under the program. If a creditor uses an average of index values or any other index formula, the history given should reflect those values. The creditor should select one date or, when an average of single values is used as an index, one period and should base the example on index values measured as of that same date or period for each year shown in the history. A date or period at any time during the year may be selected, but the same date or period must be used for each year in the historical example. For example, a creditor could use values for the first business day in July or for the first week ending in July for each of the 15 years shown in the example.**

**1. Failure To Disclose -** Pursuant to this section, the lender must provide the borrower with historical index values when the loan is an adjustable rate loan and adjustments are based on an index. There is no existing evidence in the documents provided to me that this disclosure was ever provided to the borrower.

**(D) California Civil Code CIV Section 1916.7 10 (C) An applicant for a loan originated pursuant to the provisions of this section must be given, at the time he or she requests an application, a disclosure notice in the following form: "NOTICE TO BORROWER IMPORTANT INFORMATION ABOUT THE ADJUSTABLE PAYMENT, ADJUSTABLE-RATE LOAN. PLEASE READ CAREFULLY" (the code continues to set form, format, and mandates required fonts and wording which recommends the borrower to "Shop Around"**

**1. Failure To Disclose -** The intent of the State Legislature in approving this statute was to fully inform home buyers of the pros and cons of adjustable rate mortgages and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix. There is no evidence that this disclosure was provided to the borrower at any time during the processing of this loan.

**(E) California Civil Code CIV Section 1916.7 10 (c)  II. NDEX. "Adjustments to interest rate of an adjustable-payment, adjustable-rate mortgage loan must correspond directly to the movement of an index which is selected, but not controlled, by the lender. Any adjustments to the interest rate are subject to limitations provided in the loan contract. If the index moves down, the lender must reduce the interest rate by at least the decrease in the index. If the index moves up, the lender has the right to increase the interest rate by that amount. Although making such an increase is optional by the lender, you should be aware that the lender has this right and may be contractually obligated to exercise it.**

**(Continued On Page 5)**

Claudio Aguirre

**2. Assignment Ineffectual -** A more troubling issue here is that an agreement requires two parties as between MERS and GN Mortgage. I have discovered that GN Mortgage ceased to exist nationally in 2005 and therefore, the MERS agreement ceased to exist concurrently. I have noted that the Corporation Assignment Of Deed Of Trust was executed in 2011 by an alleged Vice President Of MERS as nominee of a deceased entity based on a MERS membership agreement with that entity. Therefore, the assignment would have no standing because the agreement was void by demise.

**Attorney Note:** Two recent California appellant decisions, Gomes v. Countrywide and Robinson v. Countrywide have upheld that MERS does have standing to foreclose and to assign security instruments. However, the issue of the trustee having the power of sale pursuant to the Deed Of Trust was not presented as an argument by plaintiff's counsel. Further, the road to foreclosure and assignments of power of sale should have been from MERS through the Trustee and not from MERS directly. (See MERS below)

**(C) UCC §3-305. "for the note to be enforced, the person who asserts the status of the holder must be in possession of the instrument."** *See* **UCC § 1-201 (20) and comments.**

**1. Conflicting Beneficiaries** – The Corporation Assignment Of Deed Of Trust (Exhibit A) purports to assign security instruments to Aurora Loan Services LLC who is the foreclosing beneficiary through MERS. However, through my investigation of the MERS database, I have determined that the MERS identification number (MIN) of 1000165-0000527068-0 as referenced in the Deed Of Trust discloses CitiBank, N.A. (Exhibit F) as the beneficiary most likely of a securitized trust. Therefore, there exist two entities which may assert ownership of this loan with power of sale. If Aurora succeeds with foreclosure sale, CitiBank could also commence foreclose at a later date under the same security instrument. What would happen then to any bona fide buyer who acquired the property through foreclosure? It crucial at this point for judicial notice to determine just exactly who is the true and legal holder of this loan.

**(D1) California Civil Code 2934(a) (D) (4) The substitution shall contain the date of recordation of the trust deed, the name of the trustor, the book and page or instrument number where the trust deed is recorded, and the name of the new trustee.** *From the time the substitution is filed for record,* **the new trustee shall succeed to all the powers, duties, authority, and title granted and delegated to the trustee named in the deed of trust**

**(D2) Federal Trade Commission Sec 5 - Unfair Business Practices – Deceptive Business Acts**

**(D3) California Business And Professions Code Section 17200 As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.**

**(Continued On Page 8)**

Claudio Aguirre

**1. Unauthorized Agent, Deceptive Business Act** – Before a Trustee can commence a foreclosure, they must be empowered by the beneficiary either by a Deed Of Trust or a valid Substitution Of Trustee recorded in the County in which the trust property is situated. I have noted that the original Trustee on the Deed Of Trust was 6700 Corporation. A Substitution Of Trustee naming Cal-Western Reconveyance Corporation as the substituted trustee (Exhibit H) was executed on 04/08/2009 by Joe Krasovic (Exhibit I) as Assistant Secretary for Mortgage Electronic Registration Systems (MERS). This document was acknowledged by the notary Rhonda Rorie on that same date who asserted that Joe Krasovic was who he alleged to be. I have discovered via United Trustee's Association (Exhibit G) that Joe Krasovic is indeed an employee of Cal-Western Reconveyance Corporation who happens to be the Substituted Trustee named in the Substitution Of Trustee. Therefore, Cal-Western Reconveyance Corporation appointed oneself as Trustee and in doing so, initiated foreclosure on a consumer's principle residence by executing and recording a Notice Of Default. If this act judicially stands, what's to stop anyone from appointing oneself as a substituted trustee disguised as an Assistant Secretary Of Mers? Given this discovery, all instruments originated, executed and recorded by Cal-Western Reconveyance Corporation may be voidable.

**2. Deceptive Business Act, Invalid Substitution Of Trustee** - Page 13 paragraph 24 of the Deed Of Trust (Exhibit J) under "Substitute Trustee", the language clearly states that the **Lender**, may appoint successor trustees via an instrument acknowledged by the **Lender** and recorded in the County in which the property is located. This paragraph also states **"This procedure for substitution shall govern to the exclusion of all other provisions for substitution"** This implies that only the Lender can substitute a trustee. The Lender as defined on page 1 of the Deed Of Trust (Exhibit D) is GN Mortgage and there is no mention of Successors or Assigns. This paragraph does not state that successors, assigns, nominees or agents may appoint a Successor Trustee. Therefore, The Substitution Of Trustee is invalid as it was executed by an alleged Assistant Secretary of MERS (appointing oneself as trustee) and not the Lender.

**3. Malfeasant and Unconscionable Acts, Evidence Of Back Dating, Notary Fraud** – I have noted that the Substitution Of Trustee (Exhibit I) was allegedly executed by Joe Krasovic on 04/08/2009 which was prior to the day the Notice Of Default (Exhibit J) was recorded. I have also noted that this instrument was not recorded until 06/16/2009 which was 56 days the Notice Of Default (Exhibit K) was recorded. Under what species of prudence does one execute an instrument then wait 56 days to record it when timing is of such extreme importance? Further, I have noted that the dates on instrument were handwritten by the same individual which not only reeks of backdating but the similarity of the handwriting of the dates reeks of notary fraud as well. It appears the notary entered the dates for Joe Krasovic as well as her. If Joe Krasovic was present before her, why then would he not date his signature in his own handwriting? Evidence can only suggest that the date on exhibit D was back dated by the notary to comply with the NOD which had already been recorded.

**Attorney Note** – It is highly recommend that a letter be sent to the California Secretary Of State addressing this issue and requesting a copy of the notary ledger page applicable to the dates.

(Continued On Page 9)

Claudio Aguirre

## Special Investigation

**(A1 California's Financial Code §22000 et seq., "[n]o person shall engage in the business of a finance lender or broker without obtaining a license from the commissioner.**

**(1) Unlicensed Lender -** The Corporation Assignment Of Deed Of Trust (Exhibit A) was signed by Jan Walsh as Vice President Mortgage Electronic Registration Systems Incorporated (MERS) who was the beneficiary nominee of GN Mortgage Inc. I have investigated the California licensing of GN Mortgage and have discovered that GN Mortgage California Finance Lender license expired on 05/11/2005 (Exhibit B) which was two months prior to the origination of the loan subject to this loan. Therefore, GN Mortgage was not licensed to conduct business in the state of California at the time this loan was originated. I have further investigated the licensing of Guaranty Bank who was the parent company of GN Mortgage and have discovered that they were not licensed (Exhibit C) no ever have been licensed to conduct business in California.

**(B1) Federal Trade Commission Sec 5 - Unfair Business Practices – Deceptive Business Acts - Predatory Lending**

**(B2) California Business And Professions Code Section 17200 As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.**

**(1) Potential Fraud & Malfeasance, Perjury -** The Corporation Assignment Of Deed Of Trust (Exhibit A) was signed by Jan Walsh as Vice President Mortgage Electronic Registration Systems Incorporated (MERS) who was the beneficiary nominee of GN Mortgage Inc. I have conducted a background investigation of Jan Walsh and have discovered that she is actually an employed robo-signor for Aurora Loan Services (Exhibit D). Therefore, an employee of a bank disguised a Vice President of MERS appointed their employer as the beneficiary of the loan. Pursuant to MERS own agreements with their lenders, they are merely a recording facility and not in possession of any security instruments or Note in which they can convey. Furthermore, it has been well established in many court decisions that MERS has no standing to assign security instruments as they are not the real party in interest to the loan and have no stake in the mortgage. Further, in the MERS agreement with its members, an employee of the member may be designated an authorized signor on behalf of MERS. However, there is no language in the MERS agreement which provides for an employee to execute documents appointing or assigning instruments to oneself. The language in the agreement assumes an employee of a legitimate Grantee is conveying instruments to a legitimate Grantor. This is a case whereby the Grantee and Grantor are one in the same. If this were allowed by MERS, the stage would be set for anyone who is a member of MERS to follow the market and appoint oneself as beneficiary of failing banks as in this case with GN Mortgage. Furthermore, page 3 of the Deed Of Trust (Exhibit E) under Transfer Of Rights In The Property, the language states therein that "Borrower irrevocably grants to Trustee in trust with power of sale." This suggests that only the Trustee can assign instruments which convey the power of sale and not MERS as nominal beneficiary. (See MERS below)

**(Continued On Page 7)**

Claudio Aguirre                                                                          Page 10

## Securitization

**Attorney Note:** Pursuant to the discoveries made during this examination, I have reason to believe that this loan is secured by a mortgage backed securitized trust. I have noted that the MERS database discloses Citibank N.A. as Trustee. This indicates that Citibank is the Trustee of a securitized trust. I have researched the Security Exchange Commission filings under the year 2005 within a six month forward looking window from the date of loan closing for all trusts in which Citibank is the trustee. By process of elimination, I have determined that the most likely pool under which this loan is secured is Lehman XS Trust/Series 2005-6.

## Lehman XS Trust/Series 2005-6

### http://www.secinfo.com/dr66r.z228.htm

### RELEVANT PARTIES

**Depositor:**  Structured Asset Securities Corporation

**Sponsoe and Seller:** Lehman Brothers Holdings Inc.

**Master Servicer:** Aurora Loan Services LLC

**Trustee:** Citibank, N.A.

**Cut-off Date: 10/1/2005**

**Close Date:  10/31/2005**

### Assignments (Quoted From Pooling & Servicing Agreement)

*"The Mortgage Loans **will be assigned by the Depositor to the Trustee**, together with all principal and interest received with respect to such Mortgage Loans on and after the Cut-off Date (other than Scheduled Payments due on that date). The Trustee will, concurrently with such assignment, authenticate and deliver the Certificates. Each Mortgage Loan will be identified in a schedule appearing as an exhibit to the Trust Agreement which will specify with respect to each Mortgage   Loan, among other things, the original principal balance and the Scheduled Principal Balance as of the close of business on the Cut-off Date, the Mortgage Rate, the Scheduled Payment, the maturity date, the Servicer and the Custodian of the mortgage file and the applicable Prepayment Premium provisions, if any."*

**(Continued On Page 11)**

(E1)Title 15 § 1641. Liability Of Assignees, (2) Servicer not treated as owner on basis of assignment for administrative convenience. A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

(E2) 15 U.S.C. §§ 1692-1692p. § 809. Validation of debts - (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;

**1. Default** – Pursuant to the above sections, upon receipt of a letter from the consumer, the servicer must identify the name of the creditor including the identification of a securitized trust. I have noted that a letter was sent to Aurora Loan Services (the servicer) by the homeowner requesting the name of the creditor to whom the debt is owed. The servicer has not replied to this request and is therefore in default of the above statutes.

**(F) USC § 1341. Mail Fraud And Swindles** - Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations; - by placing in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier; - shall be fined under this title or imprisoned not more than 20 years, or both.

**1. Mailing Fraudulent And Deceitful Documents** – Pursuant to the discoveries made during this investigation regarding the various instruments containing either forgery, fraud, or other deceitful acts or malfeasance, I have noted that these instruments have all been placed in the US Mail or other form of delivery to various individuals and institutions including local government recording offices. It is my belief that these acts constitute mail fraud as cited in USC § 1341 above. Furthermore, a conspiracy to commit mail fraud by all parties named on those instruments exists because of the common knowledge of such wrongdoing and the supervisory responsibilities over employees.

**(Continued On Page 10)**

**Examiner's Comment:**

**Non-Compliance with PSA - The Assignment Of Deed Of Trust (Exhibit A) executed on 11/08/2010 assigns security instruments to Aurora Loan Services and not to the Trustee as requires by the PSA. Therefore, the security instruments have not been conveyed to the trust which constitutes a default in the terms of the PSA and may bring rise to a class action on behalf of the certificate holders.**

" As to each Mortgage Loan, *the following documents are generally required to be delivered to the Trustee in accordance with the Trust Agreement:* (1) the related original mortgage note endorsed without recourse to the Trustee or in blank, (2) the original Mortgage with evidence of recording indicated thereon (or, if such original recorded Mortgage has not yet been returned by the recording office, a copy thereof certified to be a true and complete copy of such Mortgage sent for recording *(3) an original assignment of the Mortgage to the Trustee or in blank in recordable form.* it is expected that the Mortgages or assignments of Mortgage with respect to each Mortgage Loan will have been recorded in the name of an agent (MERS) on behalf of the holder of the related mortgage note. In that case, no Mortgage assignment in favor of the Trustee will be required to be prepared, delivered or recorded. Instead, the related Servicer will be required to take all actions as are necessary to cause the Trustee to be shown as the owner of the related Mortgage Loan on the records of the agent for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by the agent."

**Examiner's Comment:**

**Non-Compliance with PSA – I have noted that the Assignment Of Deed Of Trust was acknowledged by the notary of 11/08/2010 (Exhibit L) and therefore, was not in recordable form on the closing date of 10/31/2005.**

**Attorney Note:** Opposing counsel may surface with an endorsed Note or Allonge endorsing the loan to the trust. The problem with this is, endorsements are never dated so the only dated evidence the loan was transferred to anyone is the Assignment.

"Each transfer of a Mortgage Loan from the Seller to the Depositor and from the Depositor to the Trustee will be intended to be a sale of that Mortgage Loan and will be reflected as such in the Sale and Assignment Agreement and the Trust Agreement, respectively."

**Required Chain Of Title/Endorsements:**

**Lehman Brothers Holdings Inc to Structured Asset Securities Corporation to Citibank, N.A. as Trustee for Lehman XS Trust/Series 2005-6. The assignment of security instruments was to the Aurora Loan Services who was merely the servicer and not part of the chain of endorsements pursuant to the PSA. Therefore, the conduit entities did not comply with the Pooling and Servicing Agreement (PSA).**

(Continued On Page 12)

Claudio Aguirre

**Attorney Note:** In California, pursuant to California Civil Code §2932.which states "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and *vests in any person who by assignment becomes entitled to payment of the money secured by the instrument.* The power of sale may be exercised by the assignee *if the assignment is duly acknowledged and recorded.*" Therefore, the recording of an assignment of mortgage required to ensure the enforceability of the assignment of mortgage as between the assignor and assignee, and anyone with knowledge thereof. It is beyond the scope of this Examination Summary to discuss in detail the potential risks to the mortgage transferee of not recording a mortgage assignment. Those risks might include, among others, delaying the transferee's ability to foreclose on the mortgage, failing to receive notices that may go to the mortgagee of record, and otherwise leaving the assignee open to negligent or fraudulent actions or inactions by the mortgagee of record that could bind the mortgage transferee and impair the value or enforceability of the mortgage. Similarly, when an assignment of mortgage is not recorded, the assignor may be liable for certain obligations imposed upon a mortgagee of record, such as the obligation to provide a pay-off statement or mortgage release within a designated time period. Furthermore, in the event of a lost Note, a Lost Note Affidavit would be groundless because absent an Assignment, there would be no sustainable evidence the party who asserts ownership of the Note is indeed the rightful owner.



**Attorney Note:** It is not within the abilities of this examiner to determine what is and what is not in the mortgage file held by the Trustee. Therefore, is recommended that a copy of the Note disclosing the required endorsement trail, which is supposed to be in possession of the Trustee, be subpoenaed.

**(Continued On Page 13)**

Claudio Aguirre

## MERS

Pursuant to the Security Instrument, Mortgage Electronic Registration Systems Incorporated (MERS) is acting solely as nominee for Lender and Lender's successors or assigns and is the beneficiary under that security instrument. In that capacity, MERS designates signors who initiate the foreclosure process by executing and recording certain instruments which sets in place the entities that carry out the process of foreclosure. However, there are many judicial opinions in several different states that MERS does not have the capacity as only a nominee to execute the process of foreclosure or to assign security instruments from one beneficiary to the other. In Luis E. Gallardo, 10-04710-MM7, vs Movant US Bank National Association, as Trustee for CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-7, a recent San Diego Bankruptcy decision handed down by the Honorable Judge Margaret M. Mann, Judge Mann ruled *"Movant has not supplied evidence that establishes that Movant has standing to seek stay relief. Movant has attached an "Assignment of Deed of Trust" from MERS to Movant, which assigns the trust deed and the related note. But, there is no evidence that MERS ever received an assignment of the note or had the ability to assign the note to Movant. The note attached to the motion does not indicate that the note has been endorsed to Movant or endorsed in blank such that it became bearer paper. Without evidence either that MERS could properly assign the note, or that the note was endorsed to Movant or in blank, Movant has not established standing to seek stay relief."*

The United States Bankruptcy Court for the Eastern District of California has issued a ruling dated May 20, 2010 in the matter of In Re: Walker, Case No. 10-21656-E-11 which found that MERS could not, as a matter of law, have transferred the note to Citibank from the original lender, Bayrock Mortgage Corp. The Court's opinion is headlined stating that MERS and Citibank are not the real parties in interest.

The court found that MERS acted "only as a nominee" for Bayrock under the Security Instrument and there was no evidence that the note was transferred. The opinion also provides that "several courts have acknowledged that MERS is not the owner of the underlying note and therefore could not transfer the note, the beneficial interest in the Security Instrument, or foreclose on the property secured by the deed", citing the well-known cases of In Re Vargas (California Bankruptcy Court), Landmark v. Kesler (Kansas decision as to lack of authority of MERS), LaSalle Bank v. Lamy (New York), and In Re Foreclosure Cases (the "Boyko" decision from Ohio Federal Court).

The opinion states: "Since no evidence of MERS' ownership of the underlying note has been offered, and other courts have concluded that MERS does not own the underlying notes, this court is convinced that MERS had no interest it could transfer to Citibank. Since MERS did not own the underlying note, it could not transfer the beneficial interest of the Security Instrument to another. Any attempt to transfer the beneficial interest of a Security Instrument without ownership of the underlying note is void under most state laws."

(Continued On Page 15)

Claudio Aguirre

This opinion thus serves as a legal basis to challenge any foreclosure based on a MERS assignment; to seek to void any MERS assignment of the Security Instrument or the note to a third party for purposes of foreclosure; and should be sufficient for a borrower to not only obtain a TRO against a foreclosure sale, but also a Preliminary Injunction barring any sale pending any litigation filed by the borrower challenging a foreclosure based on a MERS assignment.

The Court concluded by stating: "Since the claimant, Citibank, has not established that it is the owner of the promissory note secured by the Security Instrument, Citibank is unable to assert a claim for payment in this case." Thus, any foreclosing party which is not the original lender which purports to claim payment due under the note and the right to foreclose on the basis of a MERS assignment does not have the right to do so under the principles of this opinion.

This ruling is more than significant not only for California borrowers, but for borrowers nationwide, as this California court made it a point to cite non-bankruptcy cases as to the lack of authority of MERS in its opinion as well as cases in judicial foreclosure states. Furthermore, this opinion is consistent with the prior rulings of the Idaho and Nevada Bankruptcy courts on the same issue, that being the lack of authority for MERS to transfer the note as it never owned it (and cannot, per MERS' own contract which provides that MERS agrees not to assert any rights to mortgage loans or properties mortgaged thereby.

**Authority Of Mortgage Electronic Registration Systems (MERS)** MERS is an enterprise that holds the mortgages of 60 million American homes. It was created by the Mortgage Bankers Association in the 1997 to run a computer registry that records mortgage loan trading activities in connection with the securitization of asset backed investments. It was primarily set up to cut costs on paperwork and publication requirements by registering the assignment of security instruments from one investor to the other. In the securitization process, mortgage loans may be purchased by one single investor or a group of many under one depository trustee without the need to record the transaction in the County in which the asset is located. The problem with MERS is that the real beneficiary is faceless and obscured from public records. By MERS standard contract agreement with its member banks, Notes are assigned to MERS in blank in order to affect the transfer of securities from one investor to the other. The problem here is, a blank note does not set a paper trail of who the owners of these investments were at any given time and therefore, a note assigned in blank does little as to enforcement. Essentially, anyone could come forth with a copy and claim to be the owner of the note.

MERS has since evolved from that of a simple registration system to that of the custodian of powers. As such, MERS has essentially blocked homeowners from preventing their houses from becoming foreclosures and loan fraud victims from pursuing their cases in court because they could not identify the companies holding their mortgage notes. Recent court rulings in several states have challenged MERS in foreclosure cases and have found that, at best, MERS only holds a copy of the blank note with the true beneficiary holding the original note. MERS however commences the foreclosure process by supposedly assigning the security instruments to a Trustee. At best, the Trustee is in possession of blank security instruments at the time the foreclosure is initiated while the still unidentified holder of the real Note remains obscured.

(Continued On Page 16)

**(A) Conspiracy, Deceitful Acts, Failure To Comply With 424B5** – Pursuant to the Pooling & Servicing Agreement (PSA) as quoted above, the conduit entities must assign all mortgages at the time of the issuance of the certificates to the Trustee. I have noted that no Assignment Of Mortgage has been recorded in Los Angeles County public records assigning the security instruments to Citibank N.A. who is identified above as the Trustee for the securities. Noting that the closing date for the above pool is 10/31/2005, it would be safe to assume that all certificates would have been issued by then. Now exists a case whereby the above named conduit entities conspired to deceive the certificate holders into thinking that all mortgages have been securitized and the security instruments have been assigned to the Trustee at the time the certificates were issued when infact they have not. This is a deceitful and fraudulant act whereby the certificates holders are unsecured on the outset and leaves open the possibility of double selling the certificates abroad. Furthermore, this act represents a violation of the PSA and prospectus as registered with the Security Exchange Commission. In addition, Mortgage Backed Securities Trusts do not acquire loans after the closing date of the trust because they are prohibited from doing so under the Internal Revenue Code, as evidenced by a 100% penalty tax on such prohibited transactions. Furthermore, the Rating Agencies rated the investment pool's risks assuming the PSA would be strictly followed by the conduit entities of the pool. Had the Rating Agencies been aware that the rules would not be followed, the pool would have been rated accordingly and given full disclosures of such rating to the investors.

**(B) Judiciary Law § 489, New York's Champerty Statute, states that a corporation or association may not "solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon." (This means conveying security instruments for the sole purpose of enforcement)**

**1. Taking An Assignment Of A Security Instrument In Default** – I have noted that the PSA states that this pool is governed under the laws of the State Of New York. New York Judge Arthur Shack said in New York and many other Judges and lawyers around the country," there is something inherently wrong with an executed assignment of a receivable from a loan that is already in default. The PSA is the governing instrument for the transaction with the investor. The investor obviously never agreed to take loans that were already declared in default. That is the OPPOSITE of what the investors wanted and the Opposite of what they were told. It is also Opposite of the security's prospectus and its underlying PSA as registered with the SEC." The 2nd paragraph of the NOD (Exhibit H) implies that the default commenced on 01/01/2009. The Assignment Of Mortgage was recorded on 04/08/2011 assigning the security instruments to Aurora Loan Services whi is the Master Servicer of the Trust. Therefore, the conduit entities did not convey the security instruments to the trust until 27.5 months after the loan was in default. Further, according to these authorities, Mortgage-backed trusts are not allowed under their own rules to acquire nonperforming loans after the closing date of the trust and add such loans to the trust because of significant additional tax liability to the trust if it adds properties in violation of its own documents. These rules are in place to protect the investors in the trust.

(Continued On Page 14)

Where's The Note, Who's The Holder: Enforcement Of Promissory Note Secured By Real Estate - by Hon. Samuel L. Bufford & Hon. R. Glen Ayers

## Landmark v. Kesler – Kansas Court of Appeals August 2009

MERS claims that it holds the title to the second mortgage, not the real estate. So it does, but only as a nominee. In terms of the roles that we've discussed in the mortgage business, MERS holds the mortgage but without rights to the debt. The district court found that MERS was merely an agent for the principal player, Millennia. While MERS objects to its characterization as an agent, it's a fair one.

MERS had no right to the underlying debt repayment secured by the mortgage; MERS did not even act as the servicing agent to receive the payments and remit them to the lender. MERS's right to act to enforce the mortgage was strictly limited: if "necessary to comply with law or custom," MERS could foreclose the mortgage or enter a release of the mortgage. MERS certainly could not act at odds to its principal, the lender. Its role fits the classic definition of an agent: one "'authorized by another to act for him, or intrusted with another's business.'" In re Tax Appeal of Scholastic Book Clubs, Inc., 260 Kan. 528, 534, 920 P.2d 947 (1996]) (quoting Black's Law Dictionary 85 [4th ed.1968]).

180*180 Only one Kansas case has discussed the meaning of nominee in any detail. In *Thompson v. Meyers*, 211 Kan. 26, 30, 505 P.2d 680 (1973), the court noted that the meaning of the term may vary from a pure straw man or limited agent to one who has broader authority.

But whatever authority the nominee may have comes from the delegation of that authority by the principal. In its ordinary meaning, a nominee represents the principal in only a "nominal capacity" and does not receive any property or ownership rights of the person represented. See, *e.g., Cisco v. Van Lew*, 60 Cal.App.2d 575, 583-84, 141 P.2d 433 (1943); see also *Applebaum v. Avaya, Inc.*, 812 A.2d 880, 889 (Del.2002) (referring to nominees "as agents of the beneficial owners"). The Millennia mortgage does not purport to give MERS any greater rights than normally given a nominee. The mortgage says that MERS acts "solely as nominee for Lender." **There is no express grant of any right to MERS to transfer or sell the mortgage or even to assign its duties as nominee.** Nor does MERS obtain any right to the borrower's payments or even a role in receiving payments.

## MERS v. Southwest Homes of Arkansas Supreme Court of Arkansas March 2009

**MERS holds no authority to act as an agent and holds no property interest in the mortgaged land. It is not a necessary party.** In [*11] this dispute over foreclosure on the subject real property under the mortgage and the deed of trust, complete relief may be granted whether or not MERS is a party. MERS has no interest to protect. **It simply was not a necessary party.** See Ark. R. Civ. P. 19(a). MERS's role in this transaction casts no light on the contractual issues on appeal in this case. See, e.g., Wilmans v. Sears, Roebuck &amp; Co., 355 Ark. 668, 144 S.W.3d 245 (2004).

## Bellistri v. Ocwen – Missouri Court of Appeals March 2009

When it assigned the deed of trust, MERS attempted to transfer to Ocwen the deed of trust "together with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due and to become due." The record reflects that BNC was the holder of the promissory note. **There is no evidence in the record or the pleadings that MERS held the promissory note or that BNC gave MERS the authority to transfer the promissory note. MERS could not transfer the promissory note; therefore the language in the assignment of the deed of trust purporting to transfer the promissory note is ineffective.** Black v. Adrian, 80 S.W.3d 909, 914-15

(Mo. App. S.D. 2002) ("[A]ssignee of a deed of trust or a promissory note is vested with all interests, rights and powers possessed by the assignor in the mortgaged property"). **MERS never held the promissory note, thus its assignment of the deed of trust to Ocwen separate from the note had no force.**

## In Re: Sheridan – US Bankruptcy Idaho October 2009

In light of Trustee's objection on this score, Movant argues that MERS' role as "nominee for Lender [i.e., Fieldstone Mortgage Company] and Lender's successors and assigns"**14** gives it ample authority to assert the stay relief request under the Deed of Trust for whatever successor in interest or assignee might have the beneficial interest. Even if the proposition is accepted that the Deed of Trust provisions give MERS the ability to act as an agent ("nominee") for another, it acts not on its own account. Its capacity is representative.

**14**
 **This language appears in the Deed of Trust only.  There is no mention of MERS in the Note.**


## In Re: Walker – US Bankruptcy CA May 2010

"MERS acted only as a "nominee" for Bayrock Mortgage under the Deed of Trust. Since no evidence has been offered that the promissory note has been transferred, MERS could only transfer what ever interest it had in the Deed of Trust. However, the promissory note and the deed of trust are inseparable. "The note and the mortgage are inseparable; the formal as essential, the later as an incident. An assignment of the latter alone is a nullity." Carpenter v. Longan, 83 U.S. 217, 274, (1872); accordingly Henley v Hotaling, 41 Cal. Civ. Code 2936. **Therefore if one party receives the note and an another receives the deed of trust, the holder of the note prevails regardless of the order in which the interests were transferred.** Adler v. Sargent, 109 Cal. 42, 49-50 (1895).

Further, **several courts have acknowledged that MERS is not the owner of the underlying note and therefore could not transfer the note,** the benificial interest in the deed of trust, or foreclose upon the property secured by the deed. See *In Re Foreclosure Cases,* 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007) ; *In re Vargas,* 396 B.R. 511, 520 (Bankr. C.D. Cal. 2008) ; *Landmark Nat'l Bank v. Kelser,* 216 p.3d 158 (Kan. 2009) ; *Lasalle Bank v. Lamy,* 824 N.Y.S2d 769 (N.Y. Sup. Ct. 2006) . Since no evedence of MERS' ownership of the underlying note has been offered, and **other courts have concluded that MERS does not own the underlying notes,** this court is convinced that MERS had no interest it could transfer to Citibank.

**Since MERS did not own the underlying note, it could not transfer the beneficial interest of the deed of trust to another. Any attempt to transfer the beneficial interest of a trust deed with out ownership of the underlying note is void under California law. Therefore Citibank has not established that it is entitled to assert a claim in this case.**


Mortgage Elec. Registration Sys., Inc. (MERS) v. Johnston, Rutland, Vermont Superior Court No. 420-6-09 Rdcv (Cohen, J., Oct. 28, 2009)

The Court now raises, sua sponte, the issue of MERS's standing to bring the instant foreclosure action, either independently or in its role as "nominee" for the lender WMC.

A mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures.  Restatement (Third) of Property, Mortgages § 5.4(c).

**In general, a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation.** Id.

If the mortgage obligation is a negotiable note, Uniform Commercial Code § 3-203 is generally understood to make the right of enforcement of the promissory note transferrable only by delivery of the instrument itself to the transferee.

To be a "holder" of an instrument, 9A V.S.A. § 3-301(i), one must posses the note and the note must be payable to the person in possession of the note, or to bearer. 9A V.S.A. § 1-201(b)(21)(A) (emphasis added). Here, **the "holder" option is not available to MERS because the note is not payable to MERS, nor has it been indorsed, either specifically to MERS or in blank**. See Id.; 9A

In a foreclosure situation whereby MERS is the claimed beneficiary and the true beneficiary obtains the Deed affecting a credit sale back to the lender, MERS schemes to avoid the transfer tax of the transaction. Furthermore, in non-judicial states, MERS admits to merely holding title as nominee for the true beneficiary. Here is an excerpt from their on web site. *"Normally, where the name of the grantee under the Trustee's Deed Upon Sale is different than the name of the foreclosing entity, the Trustee's Deed Upon Sale states that the "Grantee was not the foreclosing beneficiary." This designation triggers the imposition of transfer taxes on the sale. It is important to note that in a MERS foreclosure sale, even where the property reverts, the name of the grantee will be different than the name of the entity foreclosing. Nonetheless, the Trustee's Deed Upon Sale should state that "The Grantee was the foreclosing beneficiary." This is because MERS merely holds title as nominee for the true beneficiary; **it is the true beneficiary that has actually foreclosed and acquired title"**.* By this admission, MERS has stated that they are not, and was not, the true beneficiary thereby nullifying the nomination pursuant to the Security Instrument.

**Attorney Note:** See MERS case law for authorities attached to this

**Disclosure:** I have completed my examination and investigation of the mortgage documents for which you have engaged me. The scope of my examination is to determine the accuracy and compliance with Federal, State, and local laws as they may apply to your loan(s). I pay particular attention to discovery of evidence that would support legal action against the current lender(s) to either modify, or rescind the existing loan(s), or in the event of an executed foreclosure, overturn the action. The recommendations and opinions entered herein by me are not intended as legal advice or counseling. I strongly advise that you consult with an attorney in matters related to this examination and the report hereof.

Thank you for your business. I look forward to being of further service.

Charles J. Horner, ACFEI, CREB
Chief Examiner

A nominee of the owner of a note and mortgage **may not effectively assign the note and mortgage to [\*\*6] another for want of an ownership interest in said note and mortgage by the nominee**. Since a note secured by a mortgage is a negotiable instrument, it may be assigned by indorsement provided such indorsement is affixed on the note itself or on a paper so firmly attached thereto to become a part thereof (*Slutsky v BloomingGrove Inn, Inc., 147 A.D.2d 208 542 N.Y.S.2d 721*).

Accordingly, **only the owner of the both the note and mortgage at the time of the commencement of the action may seek [\*\*8] the remedy of foreclosure.**

**The December 29, 2005 assignment of the mortgage** to the plaintiff, upon which the plaintiff originally predicated its claims of ownership to the subject mortgage, **was made by an entity (MERS), which had no ownership interest in either the note or the mortgage at the time the purported assignment thereof was made. The December 29, 2005 assignment of mortgage is thus invalid.**

In Re: Mitchell United States Bankruptcy Court State of Nevada August 19, 2008

MERS must have both constitutional and prudential standing, and be the real party in interest under FED. R. CIV. P. 17, in order to be entitled to lift-stay relief. Constitutional standing under Article III requires, at a minimum, that a party must have suffered some actual or threatened injury as a result of the defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision. Valley Forge Christian Coll. v. Am. United for Separation of Church and State, 454 U.S. 464, 472 (1982)(citations and internal quotations omitted).

Beyond the Article III requirements of injury in fact, causation, and redressibility, MERS must also have prudential standing, which is judicially-created set of principles that places limits on the class of persons who may invoke the courts' powers. See Warth v. Seldin, 422 U.S. 490, 499 (1975). As a prudential matter, a plaintiff must assert "his own legal interests as the real party in interest," Dunmore v. United States, 358 F.3d 1107, 1112 (9 Cir. 2004), as found in the FED. R. CIV. P. 17, which provides "[a]n action must be prosecuted in the name of the real party in interest."

MERS does not have standing merely because it is the alleged beneficiary under the deed of trust. It is not a beneficiary and, in any event, the mere fact that an entity is a named beneficiary of a deed of trust is insufficient to enforce the obligation.

But more importantly, even if MERS is the nominee of the beneficiary, or the motion was brought by the beneficiary, that mere allegation is not sufficient to confer standing. Under Nevada law a negotiable promissory note is enforceable by: (1) the holder of the note, or (2) a nonholder in possession of the note who has the rights of a holder. Thus **if MERS is not the holder of the note, then to enforce it MERS must be a transferee in possession who is entitled to the rights of a holder or have authority under state law to act for the holder.** Simply being a beneficiary or having an assignment of a deed of trust is not enough to be entitled to foreclose on a deed of trust. For there to be a valid assignment for purposes of foreclosure both the note and the deed of trust must be assigned. **A mortgage loan consists of a promissory note and a security instrument, typically a mortgage or a deed of trust. When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured."** RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. a (1997). A person holding only a note lacks the power to foreclose because it lacks the security, and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it. See RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. e (1997). **"Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper."** 4 RICHARD R.POWELL, POWELL ON REAL PROPERTY, § 37.27[2] (2000).

This distinction between judicial and non-judicial foreclosure states, or deficiency and non-deficiency ones, is one which MERS has designed out of whole cloth. **In order to foreclose,**

V.S.A. § 3-205(b) (blank indorsement becomes payable to bearer). Also, 9A V.S.A. § 3-301(iii) is not applicable, as **it does not appear that plaintiff is entitled to enforce the instrument pursuant to either section 3-309 or 3-418(d).**

In its Complaint, **MERS does not assert to "hold" the Note, nor does it assert that it can otherwise enforce the Note.** Therefore, **MERS cannot enforce the underlying obligation, and may not enforce the mortgage deed it holds in its name.** See Restatement (Third) of Property, Mortgages § 5.4(c); see also cmt. e. This is consistent with MERS's role "solely as nominee" in that it "holds only legal title to the interests granted by Borrower in this Security Instrument."

Furthermore, **separation of the obligation from the mortgage results in a practical loss of efficacy of the mortgage.** Id. cmt. a. MERS and the lender **intentionally split the obligation and the mortgage deed.** This split was necessary to create the MERS system and facilitate the growth of the secondary mortgage market. See Phyllis K. Slesinger & Daniel Mclaughlin, Mortgage Electronic Registration System, 31 IDAHO L. REV. 805, 818 fn.2 (stating "[f]or mortgages sold into the secondary market, legal title and equitable ownership are commonly severed. Mortgage servicers retain bare legal title to facilitate mortgage servicing; equitable interests are transferred to the investor.").

**ORDER**
Plaintiff Mortgage Electronic Registration Systems, Inc.'s foreclosure action is **DISMISSED for lack of standing.** Accordingly, the Court's **Order**, issued August 27, 2009, **granting plaintiff's Motion for Default Judgment** against the defendants Frank and Ellen Johnston is **VACATED.** The dismissal of the foreclosure action is without prejudice as to allow the proper plaintiff to come forward.

Furthermore, because this is a case of first impression under Vermont law and because it involves important issues concerning mortgage law and real estate title law, the Court will certify the issue of standing to the Vermont Supreme Court pursuant to V.R.C.P. 80.1(m).

LaSalle Bank v.Michael Lamy, Joan Lamy SUPREME COURT OF NEW YORK, SUFFOLK COUNTY
*2006 NY Slip Op 51534U; 2006 N.Y. Misc. LEXIS 2127*

As this court indicated in its prior order of March 31, 2006, **only the owner of the note and mortgage at the time of the commencement of a foreclosure action may properly prosecute said action** (*Kluge v Fugazy* 145A.D.2d 537, 536 N.Y.S.2d 92; see also, *Katz v Eastville Realty Co.*, 249 A.D.2d 243, 672 N.Y.S.2d 308).

Because ownership of both the note and mortgage at the time of the commencement of a mortgage foreclosure action is a necessary element of the plaintiff's cause of action for foreclosure of the mortgage, **entry of a default judgment against the defendant mortgagors and others joined as party defendants is precluded** where the plaintiff's ownership interest in both the note and the mortgage is not ascertainable from the pleadings and the documentation submitted in support of the motion (CPLR 3215; RPAPL 1321; see also *Beaton v Transit Facility Corp*, 14 A.D.3d 637, 789 N.Y.S.2d 314, and the cases cited therein; see also, *Morgan v Bagayoko*, 1 A.D.3d 582,767 N.Y.S.2d 631).

However, this court and others have repeatedly held that a **nominee of the owner of the note and mortgage, such Mortgage Electronic Registration Systems, Inc.(MERS), may not prosecute a mortgage foreclosure action in its own name as nominee of the original lender because it lacks ownership of the note and mortgage at the time of the prosecution of the action** (*Mortgage Electronic Systems, Inc. v Burek*, 4 Misc. 3d1030A, 798 N.Y.S.2d 346; *Mortgage Electronic Systems, Inc. v Bastian*, 12 Misc. 3d 1182(A), 2006 N.Y. Misc.LEXIS 1901, 2006 WL 1985461; see also, "MERS Foreclosures Continue to Face Challenges in Suffolk County Courts", by Sam Weisberg, 5/30/2006 NYLJ 20, [**5] (col.1); "*Challenges to MERS Standing*, by Kenneth M. Block and Jeffrey R. Steiner, 11/16/05 NYLJ 5 (col. 2); CF., *Fairbanks Capital Corp. v Nagel*, 289 A.D.2d 99,735 N.Y.S.2d 13).

**MERS must establish there has been a sufficient transfer of both the note and deed of trust, or that it has authority under state law to act for the note's holder.** See RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. c (1997). See also, In re Vargas, 396 B.R. 511, 516-17 (Bankr. C.D. Calif. 2008).

Moreover, by virtue of the fact that some of the motions were filed even after the note was transferred out of the MERS system, it **is apparent that MERS has not tracked (or been appropriately advised of) the assignment of the note to a non-member.**

There appears to be **absolutely no requirement that these Certifying Officers have any knowledge of the loan in question.** From the MERS website it appears that the "Certifying Official" (the person who works for the holder of the note) is not an employee of the servicer either.

Under FED. R. CIV. P. 17 **an action must be prosecuted in the name of the real party in interest.** "As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name." 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1553 (2d ed. 1990). An agent with ownership interest in the subject matter of the suit is a real party in interest. Id. There is no evidence, however, of an agency relationship here or that MERS has any ownership interest making it the real party in interest under Rule 17.

Even if the defects were ones of pure pleading, the testimony in these cases is neither competent nor admissible. Each of the affiants in the remaining cases testify as follows:
*I have been appointed as Assistant Secretary of Mortgage Electronic Registration Systems., Inc. ("MERS") under a Corporate Resolution that was executed on [date]. I make this affidavit in support of Movant. I have reviewed the loan file relating to the above-referenced matter, and if called upon to testify as to the facts set forth in this Affidavit, I could and would testify competently based upon my review. The affiant then purports to set forth the history of the negotiation and transfer of the note*
*and who now has possession.*

First, this testimony is not admissible because there is no evidence that the affiants are competent witnesses. The Federal Rules of Evidence apply in bankruptcy yet there is no evidence that these Certifying Officers have adequate personal knowledge of the facts under FED. R. EVID. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

CONCLUSION
       The lift-stay motions in Dart and Hawkins are denied. **MERS may not enforce the notes as the alleged beneficiary.** While MERS may have standing to prosecute the motion in the name of its Member as a nominee, t**here is no evidence that the named nominee is entitled to enforce the note or that MERS is the agent of the note's holder.** Indeed, the evidence is to the contrary, the note has been sold, and the named nominee no longer has any interest in the note.
IT IS SO ORDERED.

MERS v. Cabrera 11th Judicial Circuit Miami-Dade County September 28, 2005

In Re: Vargas U.S. Bankruptcy Court Central District California September 30, 2008

The MERS Experience: A Member's Experience from Angst to Zen
MERS is not a system of legal record nor a replacement for the public land records. Mortgages must be recorded in the county land records.

LaSalle Bank v. Smith, MERS Supreme Court, Kings County, NY March 22, 2010

**TRUTH-IN-LENDING DISCLOSURE STATEMENT**
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER OR LENDER'S AGENT: GN Mortgage, LLC.
21731 Ventura Blvd., Ste. 300
Woodland Hills, CA 91364

☐ Preliminary ☒ Final
DATE: 07/08/05
LOAN NO.: 0010736981
Type of Loan: Conventional
APP NO.: 0010736981

BORROWERS: Claudio Aguirre

ADDRESS: 28174 LANGSIDE AVENUE
CITY/STATE/ZIP: CANYON COUNTRY, CA 91321
PROPERTY: 18740 Vista Del Canon E #79
NEWHALL, CA 91321

*(handwritten)* LA = $244000
TR = 6.375%

*(handwritten left margin)* -1,030

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.902 | | | |
| 6.799 % | $ 360,192.26 | $ 233,490.26 | $ 593,682.52 |

*(handwritten)* 59,650.57

| 60 | $1,296.26 | September 1, 2005 | 60 | $1,321.67 | September 1, 2010 |
|---|---|---|---|---|---|

DEMAND FEATURE: ☒ This loan does not have a Demand Feature. ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE: THE CURRENT INDEX RATE IS 3.7290
☒ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 18740 Vista Del Canon E #79 NEWHALL, CA 91321

ASSUMPTION: Someone buying this property ☒ cannot assume the remaining balance due under original mortgage terms ☐ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES: $ ** See HUD1 Settlement Statement

PROPERTY INSURANCE: ☒ Property hazard insurance in the amount of $ ***** with a mortgage clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender. Hazard Insurance ☐ is ☒ is not available through the lender at an estimated cost of $ N/A for a year term.
*****The loan amount or a lesser amount as allowed by applicable state law.

LATE CHARGES: If your payment is more than 15 days late, you will be charged a late charge of 5.000 % of the overdue payment.

PREPAYMENT: If you pay off your loan early, you
☒ may ☐ will not have to pay a penalty.
☐ may ☒ will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
e means definite

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Claudio Aguirre _____ BORROWER / DATE _____ BORROWER / DATE

_____ BORROWER / DATE _____ BORROWER / DATE

*(handwritten)* Exhibit 1

-788 R810 VMP MORTGAGE FORMS - (800)521-7291 Page 1 of 2
© 2003 GNP Systems, Inc. DOC #:060401

**Return to Input Screen**

### Basic Loan Information

| | |
|---|---|
| Type of Loan | Conventional |
| Loan Amount ( includes upfront mortgage insurance premium, if applicable ) | $244,000.00 |
| Initial Interest Rate on Loan | 6.375% |
| Loan Term (in months) | 30 years |
| Initial Monthly Payment | $1,522.25 |
| Current Value of Property | $244,000 |

### Other Fees & Charges

| | |
|---|---|
| Other APR Fees | $10,509.74 |
| Total Fees and Charges | $10,509.74 |

### Rate Adjustments & Minimum/Maximum Rates

| | |
|---|---|
| Rate Index Base Value | 3.73% |
| Margin | 2.75% |
| Number of Months to 1st Adjustment | 6 months |
| Maximum Rate Change on 1st Adjustment | 12.38% |
| Duration Between Subsequent Rate Adjustments | 6 months |
| Subsequent Rate Adjustments | 2.00% |
| The APR on this loan is (6.901928% for proofing purposes) | 6.902% |

**Return to Input Screen**

# Exhibit 2

**TRUTH-IN-LENDING ADDENDUM**

| | | | |
|---|---|---|---|
| Borrower: | Claudio Aguirre | Sales Price: | 305,000.00 |
| Loan Number: | 0010736981 | Appraised Value: | 305,000.00 |

| | | | |
|---|---|---|---|
| Closing Date: | July 8, 2005 | | |
| Date of Disbursement: | July 8, 2005 | Note Rate: | 6.375% |
| Date of 1st payment: | September 1, 2005 | Origination Fee: | $0.00 |
| Number of Odd Days: | 24 | Discount Fee: | .250% |
| Per Diem: | 00000042.616438 | | |
| Property Address: | 18740 Vista Del Canon E #79 NEWHALL, CA 91321 | | |

**ITEMIZATION OF AMOUNT FINANCED:**

The Amount Financed is the loan amount applied for less the prepaid finance charges. The Amount Financed is the figure on which the Annual Percentage Rate (APR) is based. The following charges are those charges in connection with the loan you have applied for that are considered prepaid finance charges.

This form does not cover all items you will be required to pay in cash at settlement and only covers those items considered prepaid finance charges. For example, deposits in escrow for real estate taxes and insurance, recording fees, title fees and inspections (if applicable) are not covered on this form. You may wish to inquire as to the amounts of such other items. You may be required to pay other additional amounts at settlement.

(   ) If checked, all disclosures are estimates.

| PREPAID FINANCE CHARGES: | LOAN AMOUNT | $244,000.00 |
|---|---|---|
| 0802 Discount Fee 1 | 610.00 | |
| 0813 Tax Service Fee | 75.00 | |
| 0814 Misc Broker Fees | 850.00 | |
| 0818 Processing Fee | 650.00 | |
| 0821 GM Admin Fee | 610.00 | |
| 0823 Orig Fee to Mtg Broker | 3,660.00 | |
| 0828 Life of Loan Flood Cert | 3.00 | |
| 0843 Wire Fee | 25.00 | |
| 0901 Prepaid Interest | 1,022.79 | |
| 1101 Settlement/Closing Fee | 3,000.00 | |
| 1309 MERS Registration Fee | 3.95 | |

| | |
|---|---|
| TOTAL PREPAID FINANCE CHARGES | (   $10,509.74   ) |
| AMOUNT FINANCED: | $233,490.26 |

# ExhibiT 3

DOC #:703400  APPL #:0010736981  LOAN #:0010736981  ENV #:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of  August, 2010  , and on that day every
6th          month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank
offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street
Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in
which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information.
The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**          SEE ATTACHED INTEREST ONLY ADDENDUM

[illegible text]

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than          12.375 %
or less than         6.375  %. Thereafter, my interest rate will never be increased or decreased on any single
Change Date by more than   Two          percentage point(s) (          2.000 %)
from the rate of interest I have been paying for the preceding          6          months. My interest rate will never be greater
than          12.375  %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment
beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly
payment before the effective date of any change. The notice will include information required by law to be given to me and also
the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use
my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the
Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly
payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my
monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial
Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other
loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge
shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from
me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the
Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated
as a partial Prepayment.

DOC #:328032                          APPL #:0010726901                          LOAN #:0010726901
                                                                                 Form 3520 1/01

Page 2 of 4

Ex hibiT 4

2

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

ASSIGNMENT PREP
AURORA LOAN SERVICES
P.O Box 1706
Scottsbluff, NE 66363-1706



*20110514003*

1209 857-14

CORPORATE ASSIGNMENT OF DEED OF TRUST

04042 3314

Los Angeles, California
SELLER'S SERVICING #:0031269083 "AGUIRRE"
OLD SERVICING #: FC

MERS #: 100019000005270890  VRU #: 1-888-679-6377

Prepared By:  Traci Schneider, AURORA LOAN SERVICES 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE
59363-1706 308-635-3500

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR GN
MORTGAGE, LLC., A WISCONSIN LIMITED LIABILITY COMPANY ITS SUCCESSORS OR ASSIGNS hereby
grants, assigns and tranfers to AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE
59361 all beneficial interest under that certain Deed of Trust dated 07/08/2005 , in the amount of $244,000.00,
executed by CLAUDIO AGUIRRE, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY. to MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GN MORTGAGE, LLC., A WISCONSIN
LIMITED LIABILITY COMPANY and Recorded:  07/21/2005  in Book: N/A Page: N/A as Instrument No.: 05 1720926
in the County of Los Angeles, State of California

Assessor's/Tax ID No. 61771781

Therein described or referred to, in said Deed of Trust, the money due and to become thereon with interest, and
all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR GN MORTGAGE, LLC., A
WISCONSIN LIMITED LIABILITY COMPANY ITS SUCCESSORS OR ASSIGNS
On November 8th, 2010  Effective Date: 4/21/09



JAN WALSH, Vice-President

*TRS*TRSALSP1 V08/2010 01 65.55 PM* ALSID1ALSMC0000080000809887243* CALOS /\* 0031269083 CASTATE_TRUST_ASSIGN_ASSN "TRSALSI*

# ExhibiT A

4

## Multiple Department License Lookup

This lookup will search licensing information for the Department of Corporations, Department of Financial Institutions, Department of Real Estate and the Office of Real Estate Appraisers.

Please indicate the type of search desired, either by person name or company name and then enter the desired name. For persons, specify the name as Last Name, First Name.

Name Search Help

○ Person Name ( Last Name, First Name)

● Company Name

Name: GN Mortgage

[ Find ]

| License # | Agency | Company Name | License Type | Company/Contact/DBA | License Status | Address | Phone |
|---|---|---|---|---|---|---|---|
| 00832845 | DRE | GN Mortgage Corporation | Corporation | DES: Apfelberg, Robert Steven | Expired | CANOGA PARK, CA | N/A |
| 01193194 | DRE | G N Mortgage Corporation | Corporation | DES: Apfelberg, Robert Steven | Expired | CANOGA PARK, CA | N/A |
| 4130043 | CORP | GN MORTGAGE CORPORATION | Mortgage Banker (Main) | | No Longer Licensed as of 5/11/2005 | 4000 WEST BROWN DEER ROAD, BROWN DEER, WI 53209 | |
| 6037669 | CORP | GN MORTGAGE CORPORATION | California Finance Lender | | No Longer Licensed as of 9/4/2002 | 21731 VENTURA BOULEVARD, SUITE 200, WOODLAND HILLS, CA 91364 | |
| 8130257 | CORP | G N MORTGAGE CORPORATION | Mortgage Banker (Branch) | | No Longer Licensed as of 10/13/1999 | 899 EMBARCADERO DRIVE, SUITE 1, EL DORADO HILLS, CA 95762 | |
| 8130258 | CORP | G N MORTGAGE CORPORATION | Mortgage Banker (Branch) | | No Longer Licensed as of 4/25/2000 | 5167 CLAYTON ROAD, SUITE D, CONCORD, CA 94521 | |
| 8130298 | CORP | G N MORTGAGE CORPORATION | Mortgage Banker (Branch) | | No Longer Licensed as of 5/11/2005 | 21731 VENTURA BOULEVARD, SUITE 200, WOODLAND HILLS, CA 91364 | 710-8000 |
| 8131091 | CORP | G N MORTGAGE CORPORATION | Mortgage Banker (Branch) | | No Longer Licensed as of 5/11/2005 | 6620 SOUTHPOINT DRIVE, SOUTH, SUITE 500, JACKSONVILLE, FL 32216 | |
| 8131815 | CORP | GN MORTGAGE CORPORATION | Mortgage Banker (Branch) | | No Longer Licensed as of 10/9/2001 | 10300 FOURTH STREET, #200, RANCHO CUCAMONGA, CA 91730 | |
| 8131916 | CORP | GN MORTGAGE CORPORATION | Mortgage Banker (Branch) | | No Longer Licensed as of 5/11/2005 | 6950 SW HAMPTON, SUITE 170, TIGARD, OR 97223 | |
| 8131917 | CORP | GN MORTGAGE CORPORATION | Mortgage Banker (Branch) | | No Longer Licensed as of 5/11/2005 | 111 WEST 7TH STREET, SUITE 320, EUGENE, OR 97401 | |
| | | | | | | 10 N. ROSELLE | |

# Exhibit B

**Multiple Department License Lookup**

This lookup will search licensing information for the Department of Corporations, Department of Financial Institutions, Department of Real Estate and the Office of Real Estate Appraisers.

Please indicate the type of search desired, either by person name or company name and then enter the desired name. For persons, specify the name as Last Name, First Name.

Name Search Help

⟨ ⟩ Person Name ( Last Name, First Name)

⟨●⟩ Company Name

Name: Guaranty Bank

Find    No matches were found for this lookup.

Please note: individual Mortgage Loan Originator (MLO) licenses issued through the Department of Corporations may not be verified using this licensee look-up. In order to verify if an individual has been issued a MLO license issued by the Department of Corporations, please continue your search at NMLS Consumer Access, which is a separate stand-alone website, that contains administrative and licensing information for companies, branches, and individuals licensed or registered through the Nationwide Mortgage Licensing System and Registry (NMLS).

To locate specific details about the various licensees of the California Real Estate and Financial Service Departments Click Here

# Exhibit C

INST # ___ 6496

RECORDING FEE  5.00

AUDITOR FEE

RMA FEE___1.00  ECOM   1.00

COMPARED

FILED FOR RECORD
POTTAWATTAMIE CO. IA.

04 OCT -1  AM 10: 25

JOHN SCIORTINO
RECORDER



Prepared By:  Toni Quicke, AURORA LOAN SERVICES 601 5TH AVE, PO BOX 1706, SCOTTSBLUFF, NE
69363-1706 308-635-3506

Return By Mail To:
Michele Klein
Aurora Loan Services Inc.
P.O. Box 1706
Scottsbluff, NE  69363-1706

### SATISFACTION OF MORTGAGE

AURORA LOAN SERVICES INC. #0000539157 "DUNLAP" Lender ID:R04000539157  Pottawattamie, Iowa
KNOW ALL MEN BY THESE PRESENTS that AURORA LOAN SERVICES INC. whose address is 601 5TH AVE,
SCOTTSBLUFF, NE  69361 holder of a certain Mortgage, whose parties, dates and recording information are below,
does hereby acknowledge that it has received full payment and satisfaction of the same, and in consideration
thereof, does hereby cancel and discharge said Mortgage.

Original Grantor: KAREN SUE DUNLAP, A SINGLE PERSON
Original Grantee: CREATIVE FINANCING, INC.
Dated:  05/26/1989 Recorded: 06/02/1989  in Book/Reel/Liber: 89 Page/Folio: 24583 ReRecorded 07/07/1989  in
Book/Reel/Liber: 90 Page/Folio: 445, ReRecorded 07/31/1989  in Book/Reel/Liber: 90 Page/Folio: 2300 in the
records of the County Recorder of Pottawattamie State of Iowa

Property Address:  1520 STELLA ST, CARTER LAKE, IA  51510-1142

IN WITNESS WHEREOF, the undersigned, by the officer duly authorized, has duly executed as a free act and deed
the foregoing instrument.

AURORA LOAN SERVICES INC.
On September 17th, 2004

By: _____

JAN WALSH, Assistant Vice President



STATE OF Nebraska
COUNTY OF Scotts Bluff

On September 17th, 2004, before me, KARNA JARECKI, a Notary Public in and for Scotts Bluff in the State of
Nebraska, personally appeared JAN WALSH, Assistant Vice President, personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

_____
KARNA JARECKI
Notary Expires: 07/06/2008

GENERAL NOTARY - State of Nebraska
KARNA JARECKI
My Comm. Exp. July 6, 2008

(This area for notarial seal)

# SAmple

*ELstv.EroN1/0s4 6120s6 PIC AL5S11AL5CORVXXXCCCCC63de53157: MPOTTA* 0006539157 ASTATE_MSNT_NB, *TDOTSCAUS*

# ExhibIT D

BK 105 PG 06469

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

*TRANSFER OF RIGHTS IN THE PROPERTY*
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of LOS ANGELES :

   [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

SEE ATTACHED LEGAL DESCRIPTION.

## SEE EXHIBIT "A" ATTACHED

Parcel ID Number: 2842-027-039          which currently has the address of
18740 Del Canon E #79                         [Street]
NEWHALL                               [City], California 91321    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

DOC #:324543          APPL #:0010736981             LOAN #:0010736981

-6A(CA) (0207)             Page 2 of 15       Initials:         Form 3005 1/01

## Exhibit E     05 1720926

Select borrower type and enter borrower information to see Investor for MIN 1000165-0000527068-0.

◉ Investor for Individual Borrower

   Your entries may be either upper or lower case.
   Fields marked are required.
   ★ Last Name: **Aguirre**

★ SSN: [blank] - 3000

★ ☐ By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer.
★

[ Submit ]

○ Investor for Corporation/Non-Person Entity Borrower

   Your entries may be either upper or lower case.
   Fields marked are required.
   ★ Corporation/Non-Person Entity Name:

★ Taxpayer Identification Number:

★ ☐ By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer.
★

[ Submit ]

Servicer:  Aurora Bank FSB          Phone: (308) 220-2240
           Scottsbluff, NE

Investor:  CitiBank, N.A. as Trustee, a Division of CitiBank, N.A.

[ Close Window ]

# Exhibit F

United Trustees Association eNews - June 2008                     Page 1 of 1
Case 2:11-cv-06911-CAS-AGR   Document 24   Filed 12/06/11   Page 102 of 113   Page ID
#:351



# UTA eNews
June 23, 2008

## Fourteen New Members Join UTA

Please welcome the following fourteen new members to the UTA:



- **Chris Archuleta**, Cal-Western Reconveyance Corp., El Cajon, CA
- **Pamela Campbell**, Cal-Western Reconveyance Corp., El Cajon, CA
- **Joe Krasovic**, Cal-Western Reconveyance Corp., El Cajon, CA
- **Melissa Minas**, Cal-Western Reconveyance Corp., El Cajon, CA
- **Jennifer Victa**, Cal-Western Reconveyance Corp., El Cajon, CA
- **Robert Bourne**, First American Loanstar Trustee, Westlake, TX
- **Edward Laredo**, First American Loanstar Trustee, Westlake, TX
- **Pat Moya**, First American Loanstar Trustee, Westlake, TX
- **Therese Pfullmann**, First American Loanstar Trustee, Westlake, TX
- **Tammy Rossum**, First American Loanstar Trustee, Westlake, TX
- **David Conrad**, HL Foreclosure Services, Paso Robles, CA
- **Andrea Petritz**, Master Funding Co, Temecula, CA
- **Martha Valdez**, Master Funding Co., Temecula, CA
- **Jo-Ann Grace**, Metropolitan News, Los Angeles, CA

Welcome new members!

Also, congratulations to the following Trustee Sale Officer, who has passed the California Level 1 certification exam:

- **Jolene Meskin**, Homequity Funding Corporation, Palos Verdes Estates, CA

**Headquarters**
2030 Main Street, Suite 1300, Irvine, CA 92614
www.unitedtrustees.com | Tel: 949.260.9020 | Send us an email

# Exhibit G

2

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO



CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004



SPACE ABOVE THIS LINE FOR RECORDER'S USE

LOAN NO   XXXXXX9088 T S NO   1309851-14
Mers Phone 1-888-679-6377 Mm No 1000165 0000527068 0

09026234

## SUBSTITUTION OF TRUSTEE
This Form Provided By Cal-Western Reconveyance Corporation

WHEREAS, CLAUDIO AGUIRRE A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY       was the original Trustor,

6700 CORPORATIONA CALIFORNIA CORPORATION
was the original Trustee,

and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR GN MORTGAGE LLC A WISCONSIN LIMITED LIABILITY COMPANY       was the original Beneficiary

under that certain Deed of Trust dated July 08, 2005 and recorded on July 21, 2005 as Instrument No 05-1720926, in book XX, page XX of Official Records of LOS ANGELES County, California, and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place and stead of present Trustee thereunder, in the manner in said Deed of Trust provided

NOW, THEREFORE, the undersigned hereby substitutes

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET, P.O. BOX 22004
EL CAJON CA 92022-9004

as Trustee under said Deed of Trust.

SUBK A2 IXX          Rev 01/14RII          Page 1 of 2

21

# ExhibiT H

3

## SUBSTITUTION OF TRUSTEE

LOAN NO: 9088

TS NO: 120985/-14

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 4-8-09

Mortgage Electronic Registration Systems, Inc. (MERS)

Joe Krasovic
Assistant Secretary of MERS

STATE OF:   California
COUNTY OF:  San Diego

On 4-8-09 before me, _____ **Rhonda Rorie** _____, a Notary Public in and for said State, personally appeared Joe Krasovic, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

(Seal)



RHONDA RORIE
COMM. # 1867958
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm. Exp. May 16, 2010

$E x h i b i T \ I$

7/21/05

14

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC #:324553          APPL #:0010736981                    LOAN #:0010736981

-6A(CA) (0207)               Page 13 of 15                        Form 3005 1/01

*Exhibit J*     05 1720926

4-21-09

Recording Requested By
When Recorded Mail To

Cal-Western Reconveyance Corp.
P.O. Box 22004
525 East Main Street
El Cajon  CA  92022-9004

*1209851-14*  *NODKR*
Trustee Sale No. 1209851-14
090663314
Loan No. XXXXXXX9088  Ref: AGUIRRE, CLAUDIO

Space Above This Line For Recorder's Use

## NOTICE OF DEFAULT

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).  This amount is $5,429.95 as of April 18, 2009, and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC

C/O CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON       9004 CA  92022-9004
(619)590-9200

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Page 1 of 2

*Exhibit K*

3

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Nebraska
COUNTY OF Scotts Bluff

On November 8th, 2010, before me, LINDA D. PARKS, a Notary Public in and for Scotts Bluff in the State of
Nebraska, personally appeared JAN WALSH, Vice-President, personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

*[signature: Linda D. Parks]*

LINDA D. PARKS
Notary Expires: 11/14/2011

GENERAL NOTARY - STATE OF NEBRASKA
LINDA D PARKS
My Comm. Exp 11/14/2011

(This area for notarial seal)

"TRS"TRSALSI"11/08/2010 01 40 05 PM" ALSIC IALSIAC00000000000000097343" CALOS A' 0931266099 CASTATE_TRUST_ASSIGN_ASSN ""TRSALSI"

# Exhibit L

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**NOTICE IS HEREBY GIVEN:**

CAL-WESTERN RECONVEYANCE CORPORATION is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a deed of trust dated July 08, 2005 executed by

CLAUDIO AGUIRRE A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY as trustor, to secure certain obligations in favor of

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR GN MORTGAGE LLC A WISCONSIN LIMITED LIABILITY COMPANY as beneficiary

recorded as document 05-1720926 on July 21, 2005 in book XX page XX official records in the office of the County Recorder
of LOS ANGELES County, California, describing land therein as:

COMPLETELY DESCRIBED IN SAID DEED OF TRUST

said obligations including a promissory note for the principal sum of $244,000.00 that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Failure to pay the monthly payment due January 1, 2009 of principal and interest and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust.

That by reason thereof the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code ¶ 2923.5(b) declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code 2923.5.

T.S. 1209851-14
Dated:      April 20, 2009                    *CAL-WESTERN RECONVEYANCE CORPORATION*

Signature By   *Shannon K. Mottola*
               Shannon K. Mottola

09/05/2008 rev                                                    Nodos.doc Page 2 of 2

# ExhibiT M

# American College of Forensic Examiners Institute℠

hereby recognizes

## Charles J. Horner

as a

## Member

with all the rights and privileges pertaining thereto, so long as annual membership requirements are met and the Principles of Professional Practice are upheld.



Robert L. O'Block, MDiv, PhD, PsyD, DMin

Member since
March 2010

Identification Number
112340

Cyril Wecht, MD, JD, CFP, CMI-V
Chair, Executive Advisory Board

Expiration date
March 2012

This certificate is the property of the American College of Forensic Examiners Institute and conveys competency that the individual has met the minimum requirements to attain this credential based on specifications set forth by the American College of Forensic Examiners Institute and United States accreditation standards.



## The Forensic Examiner Creed

I do affirm that:
I shall investigate for the truth.
I shall report only the truth.
I shall avoid conflicts of advocacies.
I shall conduct myself ethically.
I shall seek to preserve the highest standard of my profession.
As a Forensic Examiner, I shall not have a monetary interest in any outcome of a matter in which I am retained.
I shall share my knowledge and experience with other examiners in a professional manner.
I shall avoid conflicts of interest and will continue my professional development throughout my career through continuing education, seminars, and other studies.
As a Forensic Examiner, I will express my expert opinion based only upon my knowledge, skill, education, training, and experience.
The light of knowledge shall guide me to the truth and with justice the truth shall prevail.
To all these things, I affirm to uphold.

American College of Forensic Examiners Institute
www.acfei.com



## ACFEI's Principles of Professional Practice

ACFEI and its members are to remain completely objective and use their ability to serve justice by the accurate determination of the facts involved.

ACFEI members are not advocates for one side or the other. Members should not intentionally withhold or omit any findings or opinions discovered during a forensic examination, which would cause the facts to be misinterpreted or distorted.

ACFEI members should not misrepresent or overstate their credentials, education, training, expertise or membership status.

ACFEI members are expected to refrain from any conduct that would be adverse to the best interest and purpose of the ACFEI. Members are to be forever vigilant of the importance of their role and to conduct themselves only in the most ethical and professional manner at all times.

American College of Forensic Examiners Institute
www.acfei.com

# <u>Verification</u>

In Witness, Whereof, Knowing the law of bearing false witness before God and Men, I Solemnly aver the above is true and correct and is presented to the Defendants in good faith and is not interposed for the purpose of delay or any other purpose with which I, the Plaintiff, have herein stated and declared.

That I have further read the above **SECOND AMENDED COMPLAINT** and know the contents thereof to be true; and the same is true of my own knowledge, except to the matters which are therein stated on my information and belief, and as to those matters I believe them to be true.

DATED: December 6, 2011

Respectfully submitted

By: Claudio Aguirre

27

**SECOND AMENDED COMPLAINT**

# Proof of Service

### Delivery by U.S. Mail: Proof of Service by Mail

**I CARLOS AGUIRRE declare that I am over the age of eighteen years and not a party to this action.**

**My address is 38587 154th St. East, Palmdale, Ca 93591.**

**On 12/06/2011,**

I served a copy of the  SECOND AMENDED COMPLAINT  by placing a true copy enclosed in a sealed envelope with postage fully prepaid in the U.S. mail, addressed as follows:

JASON W. SHORT
4375 JUTLAND DRIVE, SUITE 200
P.O. BOX 17935
SAN DIEGO, CALIFORNIA
92177

CORPORATION SERICE COMPANY

2730 GATEWAY OAKS DR STE 100

SACRAMENTO CA 95833

**Cal-Western Reconveyance Corporation,
525 E. MAIN STREET
EL CAJON, CALIFORNIA .92020**

**Aurora Loan Services, Inc.,
Mortgage Electronic Recording Systems
Joe Krasovic,
Shannon K. Mottola
Rhonda Rorie**

I declare under penalty of perjury that the foregoing is true and correct and that

this declaration was executed on 12/06/2011 at SAN FERNANDO, CALIFORNIA.

CARLOS AGUIRRE
(type or print name)

(signature)